Harlen AINSCOUGH; Michael Coulter; Barbara Johnson; Ron Parker; Robert Becker; Lorraine Surprenant; Colorado Federation of Public Employees; Colorado Association of Public Employees; and American Federation of State, County, and Municipal Employees, Colorado Council 76, Petitioners

v.

Bill OWENS, Governor, State of Colorado; and Jeffrey M. Wells, Executive Director of the Colorado Department of Personnel and General Support Services, Respondents.

No. 03SC164.

Supreme Court of Colorado, En Banc.

May 24, 2004.

Brauer, Buescher, Goldhammer & Kelman, P.C., Thomas B. Buescher, Joseph M. Goldhammer, Denver, Colorado, Attorneys for the Petitioners.

Hogan & Hartson, L.L.P., Ty Cobb, Peter H. Walsh, Denver, Colorado, Attorneys for Bill Owens, Governor of the State of Colorado.

Perkins Coie, L.L.P., Robert N. Miller, Stephanie E. Dunn, Denver, Colorado, Michael E. McLachlan, Durango, Colorado, Attorneys for Jeffrey M. Wells, Executive Director of the Colorado Department of Personnel and General Support Services.

Chief Justice MULLARKEY delivered the Opinion of the Court.

The question before us is whether individual state employees and their labor organizations have standing to sue the Governor and the Executive Director of the Department of Personnel to challenge a 2001 Executive Order and ensuing Personnel Policy that eliminated employee payroll deductions for union dues. In the trial court, the employees asserted eight claims for relief. They claimed that the policy violated three provisions of the Colorado Constitution (separation of powers, free speech, and state personnel system provisions) and two statutes (a payroll deduction law and the Administrative Procedure Act). The Governor moved to dismiss on the grounds that the employees lacked standing to sue him, that the claims were moot, and that the payroll deduction policy did not violate the Colorado Constitution or state statutes. The Executive Director also moved to dismiss. He did not assert standing or mootness, but, like the Governor, he contended that the policy did not violate any law.

The trial court granted the motions to dismiss without stating any reason for the ruling. On appeal, the court of appeals affirmed the trial court's order on the basis that the employees lacked standing to sue either the Governor or the Executive Director even though the Executive Director

had not challenged the employees' standing to sue. *Ainscough v. Owens,* 77 P.3d 761 (Colo.App.2003). We reject the court of appeals' analysis.

Colorado has a tradition of conferring standing to a wide class of plaintiffs. In addition to the traditional legal controversies, our trial courts frequently decide general complaints challenging the legality of government activities and other cases involving intangible harm. Moreover, we have long recognized that state officials can be sued in their official capacities to challenge the validity of constitutional provisions, statutes, and administrative policies. This is especially true for the Governor who is defined by our Constitution as the supreme executive of the state. In this case, the Executive Director quite properly did not raise standing below because there are numerous cases allowing such suits.

The court of appeals cites no Colorado cases holding that plaintiffs adversely affected by administrative agency action lack standing to sue the agency and the state, and we know of none. Accordingly, we reverse the judgment of the court of appeals and remand the case with directions to return it to the trial court for further proceedings consistent with this opinion.

## I. Facts and Procedural History

From the 1930s until 2001, the state allowed its employees to sign up for payroll deductions, including union dues. The state deducted the dues from employees' paychecks and forwarded the money collected to the employee associations. This process is known as "dues checkoff." Dues checkoff became a statutory right in 1973 with the passage of House Bill 1320. Ch. 119, sec. 1, § 26-1-4(1)(b) & (c), 1973 Colo. Sess. Laws 421, 421. House Bill 1320 directed the state official responsible for paying salaries and wages to deduct dues money from employees' paychecks whenever such a request was made by the employees and their associations. *Id.* In 1975, the General Assembly passed Senate Bill 466, which instructed the state controller to "regulate, approve, and review all payroll deductions for all state employees." Ch. 209, sec. 1, § 24-30-

202(23)(a), 1975 Colo. Sess. Laws 801, 801. This mandatory regulation, however, exempted "deductions expressly authorized by statute," such as the dues checkoff deductions. *Id.*

In 1996, the General Assembly enacted Senate Bill 96-228, which reorganized the Department of Personnel. This bill repealed both of the statutes described above and replaced them with section 24-50.3-104(8). Ch. 273, sec. 26, § 24-50-104(1)(b) & (c), 1996 Colo. Sess. Laws 1493, 1507; Ch. 273, sec. 27, § 24-50.3-104(8), 1996 Colo. Sess. Laws 1493, 1507. This new subsection continued to require the Executive Director of the Personnel Department to "regulate, approve, and review all payroll deductions for all state employees," and continued to exempt deductions that were "expressly authorized by statute, or state-sponsored." Ch. 273, sec. 27, § 24-50.3-104(8), 1996 Colo. Sess. Laws 1493, 1508. Because the dues checkoff statute was repealed, however, it was no longer "expressly authorized by statute" and no longer exempt from review. Thus, under the new law, the employee associations no longer had a statutory right to automatic payroll deductions.

In 1998, House Bill 98-1312 repealed section 24-50.3-104(8) and reenacted it at its current location, section 24-50-104(8). Ch. 194, sec. 1, § 24-50-104, 1998 Colo. Sess. Laws 668, 675;;f Ch. 194, sec. 7, § 24-50.3-104, 1998 Colo. Sess. Laws 668, 677.

Despite the statutory changes affecting automatic payroll deductions, the program continued basically unchanged, and employee associations as well as many other entities continued to utilize the program until 2001. For example, in addition to union dues, payroll deductions were taken for recreation and athletic dues, athletic tickets, art and music subscriptions, charitable donations, and savings bonds.

In May of 2001, five years after the latest substantive statutory change, the Governor issued Executive Order D00701 regarding automatic payroll deductions. This Executive Order "defin[ed] the policy of the State regarding payroll deductions" saying that:

[S]tate government should not use taxpayer resources to duplicate services that can be provided by the private sector. Payroll deduction services should be used for administrative convenience to the State to reduce the burdens on state government in providing employment related services to its employees. Individuals who choose to deduct from their accounts for personal reasons have the ability to arrange for personal deductions through their private financial institutions.

Because section 24–50–104(8) does not define which deductions are "state-sponsored for all state employees" and thus statutorily entitled to automatic deductions, the Governor, in his Order, designated the Colorado Combined Campaign "as the only entity 'state-sponsored for all state employees'" and thus, the only non-statutory program to be exempted from executive review and approval.[1] The Governor's Order also directed the Executive Director to "conduct the statutorily required review of all requests for payroll deductions within the director's authority, consistent with the policy expressed in this Executive Order" and to "continue all deductions that are 'state-sponsored for all state employees,' consistent with the designation contained in this Executive Order," Thus, only the Colorado Combined Campaign, and not employee association dues, was deductible.

In response to the Executive Order, the Executive Director of the Personnel Department ("Executive Director" or "Personnel Director") established a working group to study the matter and recommend action. On August 27, 2001, the Personnel Director issued a "Payroll Deduction Policy" to "provide[ ] interpretative guidance to state agencies and institutions of higher education regarding permissible payroll deductions for all state employees." In this document, the Personnel Director stated that:

State agencies and institutions of higher education *shall not permit or process payroll deductions except as expressly authorized in this Policy.* Payroll deductions are permitted *only* when:

1) required by federal law or state statute (e.g. tax withholdings, garnishments, court ordered child support);

2) authorized by federal or state statute (e.g. employee benefits, "eco passes," tax treatment elections);

3) *expressly authorized for state sponsorship by executive order of the governor* and available to all state employees (e.g. Colorado Combined Campaign); or

4) the deduction is for the purpose of facilitating the reimbursement of monies owed to the state from an employee (e.g. higher education tuition, uniforms, salary overpayments)

(emphasis added). The Policy concluded by stating that "[t]his policy shall be effective immediately, subject to a grace period for implementation of not later than November 1, 2001."

To recapitulate the history, employees had the right to automatic payroll deductions until 1996—first informally, and then by law. In 1996, this automatic right was eliminated and the Personnel Director was given authority to decide whether to allow the automatic deductions, but the state continued the payroll deductions unchanged. Finally, in 2001, the state employees' right to automatic deductions was largely eliminated when the Personnel Director cancelled all automatic deductions except those authorized by statute or executive order and those repaying money owed to the state.

On November 2, 2001, employees and their associations ("petitioners") filed suit against the Governor and the Personnel Director in their official capacities in an attempt to contest the new policy strictly limiting automatic payroll deductions. The petitioners claimed that the Governor's Executive Order: violated the constitutional doctrine of separation of powers; was beyond the authority of the Governor; and violated the policy set forth in section 24–50–104(8)(c). The employees and associations also alleged that the Personnel Director's Policy: violated section 24–50–104(8)(c); was outside of the scope of the

---

1. The Colorado Combined Campaign is a fundraising program in which state employees may donate money either to an umbrella organization comprising a variety of charities or to the individual charities themselves.

powers of the Personnel Director; violated the processes required by the Colorado Administrative Procedure Act; and violated the petitioners' free speech rights.

In response to this complaint, both the Governor and the Personnel Director filed motions to dismiss for failure to state a claim under Colorado Rule of Civil Procedure 12(b)(5). The Governor also filed a motion to dismiss based on C.R.C.P. 12(b)(1) arguing that the employees and their associations did not have standing to challenge the Executive Order. After all briefs were filed, the district court judge granted the defendants' motions to dismiss. The judge's written ruling stated, in its entirety: "The motions of defendants to dismiss are granted. Defendants are dismissed with prejudice."

The employees and their associations appealed, and the Governor again argued that petitioners lacked standing to challenge the Executive Order and failed to state a claim against him. The Personnel Director argued that petitioners failed to state a claim against him as well, but did not argue that they lacked standing.

In January of 2003, the court of appeals upheld the trial court's dismissal of the case, holding that the employees and the associations lacked standing to challenge both the Governor's Executive Order and the Personnel Director's Policy. *Ainscough*, 77 P.3d at 763. The court reasoned that in order to have standing, the employees and their associations must have suffered an injury-in-fact to a legally protected right. *Id.* The court decided that the employees and associations did not have guaranteed statutory or constitutional rights to automatic payroll deductions and, without reaching the question of injury-in-fact, held that the petitioners lacked standing against both defendants. *Id.*

We granted certiorari to decide whether the employees and their associations have standing to challenge the Governor's Executive Order and the Personnel Director's Policy. We now hold that they have standing to challenge both. As a result, we return the case to the court of appeals with instructions to remand to the trial court to proceed with the merits.

## II. Analysis

■ In this case, the employees and their associations, as plaintiffs below, brought eight claims against two defendants, asking the court to enjoin implementation and enforcement of both the Executive Order and the Personnel Director's Policy. To decide whether petitioners have standing to sue, we must decide whether petitioners' claims satisfy the two prongs of Colorado's test for standing: the plaintiff suffered (1) an injury-in-fact, (2) to a legally protected interest. In the sections below, we first examine the legal requirements for standing in more detail. We then examine whether the petitioners alleged injury-in-fact to a legally protected interest. We hold that the employees and their associations have standing to bring all eight of their claims. Moreover, we hold that both the Governor and the Executive Director in their official capacities are properly named defendants in this suit.

### A. The Law of Standing

■ In order for a court to have jurisdiction over a dispute, the plaintiff must have standing to bring the case. Standing is a threshold issue that must be satisfied in order to decide a case on the merits. *HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 892 (Colo.2002). Standing is a judicially developed test; although an actual injury is required in order to maintain the separation of powers of state government, much of the standard is a prudential exercise of judicial restraint. *Conrad v. City and County of Denver*, 656 P.2d 662, 668 (Colo. 1982). In Colorado, parties to lawsuits benefit from a relatively broad definition of standing.

■ In *Wimberly v. Ettenberg*, we held that a plaintiff must satisfy two criteria in order to establish standing. 194 Colo. 163, 168, 570 P.2d 535, 539 (1977). First, the plaintiff must have suffered an injury-in-fact, and second, this harm must have been to a legally protected interest. *Id.* The first prong is necessary under the separation of powers doctrine in article III of the Colorado

Constitution.[2] *Conrad,* 656 P.2d at 668. Without this prong, courts might encroach on the power of the legislature to make prospective laws. *Id.*

We have interpreted the first prong of Colorado's test for standing to require "a concrete adverseness which sharpens the presentation of issues that parties argue to the courts." *City of Greenwood Village v. Petitioners for Proposed City of Centennial,* 3 P.3d 427, 437 (Colo.2000) (internal quotation omitted). Standing is conveyed by neither the remote possibility of a future injury nor an injury that is overly "indirect and incidental" to the defendant's action. *Brotman v. E. Lake Creek Ranch, L.L.P.,* 31 P.3d 886, 890–91 (Colo.2001). The injury may be tangible, such as physical damage or economic harm; however, it may also be intangible, such as aesthetic issues or the deprivation of civil liberties. *Cloverleaf Kennel Club, Inc. v. Colo. Racing Comm'n,* 620 P.2d 1051, 1058 (Colo.1980). Deprivations of many legally created rights, although themselves intangible, are nevertheless injuries-in-fact.

Colorado case law provides, for example, broad taxpayer standing in the trial and appellate courts. *Colo. State Civil Serv. Employees Ass'n v. Love,* 167 Colo. 436, 444, 448 P.2d 624, 627 (1968). In *Love,* we held that citizens may sue to protect a "great public concern" regarding the constitutionality of a law. *Id.* We reasoned that "a precept of constitutional law is that a self-executing constitutional provision ipso facto affords the means of protecting the right given and of enforcing the duty imposed." *Id.* In these taxpayer standing cases, we have interpreted *Wimberly* only to require a generalized injury-in-fact: the "injury flowing from governmental violations of constitutional provisions that specifically protect the legal interests involved." *Conrad,* 656 P.2d at 668. Thus, we have interpreted *Wimberly* to confer standing when a plaintiff argues that a governmental action that harms him is unconstitutional. *Id.; see also Nicholl v. E 470 Pub.*

*Highway Auth.,* 896 P.2d 859, 866 (Colo.1995) (noting that "even where no direct economic harm is implicated, a citizen has standing to pursue his or her interest in ensuring that governmental units conform to the state constitution"); *Dodge v. Dept. of Soc. Srvs.,* 198 Colo. 379, 600 P.2d 70 (1979).

Having described the injury-in-fact prong of the *Wimberly* test, we now turn to the second prong. The second prong of Colorado's standing test requires that the plaintiff have a legal interest protecting against the alleged injury. *Wimberly,* 194 Colo. at 168, 570 P.2d at 539. This is a question of whether the plaintiff has a claim for relief under the constitution, the common law, a statute, or a rule or regulation. *Bd. of County Comm'rs v. Bowen/Edwards Assocs., Inc.,* 830 P.2d 1045, 1053 (Colo.1992). A legally protected interest may be tangible or economic such as "one of property, one arising out of contract, one protected against tortious invasions, or one founded on a statute which confers a privilege." *Wimberly,* 194 Colo. at 166, 570 P.2d at 537 (quoting *Tenn. Elec. Power Co. v. Tenn. Valley Auth.,* 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1939)). On the other hand, the right may protect something intangible such as an interest in free speech or expression, or an interest in having a government that acts within the boundaries of our state constitution. *Nicholl,* 896 P.2d at 866. Thus, legally protected rights encompass all rights arising from constitutions, statutes, and case law.

To conclude this description of Colorado's law of standing, a plaintiff has standing to sue if he or she has suffered an injury-in-fact to a legally protected interest. Although necessary, the test in Colorado has traditionally been relatively easy to satisfy.

### B. Application

Because standing is a question of law, we review the issue *de novo. Corsentino v.*

---

2. Article III says, in its entirety:
The powers of the government of this state are divided into three distinct departments,—the legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.
Colo. Const. art III.

*Cordova,* 4 P.3d 1082, 1087 (Colo.2000). In the following sections, we consider the two standing prongs in reverse order. We begin, as the court of appeals did, by examining the question of whether there was a legally protected interest. After deciding that the petitioners have satisfied this prong, we examine whether there was an injury-in-fact, and conclude that there was. Finally, we determine that both the Governor and the Personnel Director were properly named defendants in this case.

### 1. Legally Protected Right

· First, we examine whether petitioners asserted a legally protected interest. The court of appeals found that there was not. We reject its analysis. The court of appeals found merely that because no statute expressly authorized, as a matter of right, the deduction of union dues from employee paychecks, the plaintiffs alleged no injury to a legally protected right. This analysis, however, failed to consider whether the plaintiffs were entitled by constitution or statute to a discretionary determination by the personnel director of their requests for payroll deduction of union dues.

In examining whether the plaintiffs suffered injury to a legally protected right, we look not to the policy being challenged, but to the right that it is alleged to have injured. A statutory or constitutional right to a non-arbitrary exercise of discretion in considering their applications is all that is needed for a legally protected interest. If that were not true, a disappointed applicant for a discretionary governmental benefit would never have standing to challenge an abuse of, or refusal to exercise, discretion by the executive or administrative officer charged with that duty. That is clearly not the case. *See Cloverleaf Kennel Club,* 620 P.2d at 1058–59.

■ While the Governor has challenged the adequacy of the complaint's allegations that his actions were the cause of any injury and both he and the Director dispute the allegations of any injury-in-fact at all, neither of them suggests that section 24–50–104(8)(c) does not give the Director discretion to grant or deny requested payroll deductions. Because the complaint in this case alleges that

the Personnel Director's Policy and the Governor's Executive Order deprived employees and organizations of the right to even be considered for a payroll deduction, the allegations are adequate to satisfy this prong of the standing test.

### 2. Injury–in–Fact

Having found that petitioners satisfied the requirement for a legally protected interest, we must now address the question of whether there was an injury-in-fact. To determine whether there is an injury-in-fact, we accept as true the allegations set forth in the complaint. *Dunlap v. Colo. Springs Cablevision, Inc.,* 829 P.2d 1286, 1289 (Colo.1992). In this case, the individual employees allege that they have all unsuccessfully requested that the State Personnel Department automatically deduct their union dues from their paychecks. In the past, the state has honored such requests and deducted the dues and then forwarded them to the appropriate employee associations. The associations have been using this service to collect dues since 1937.

Now, in compliance with the Executive Order and the Personnel Policy, the Personnel Department no longer allows automatic payroll deductions for employee association dues. The employee associations allege that "[t]he cessation of payroll deductions for dues and other purposes will significantly impair the ability of the organizational plaintiffs to collect dues and represent their members." In addition to these injuries, the associations claim that prohibiting automatic payroll deductions will disrupt their ability to collect dues to the extent that it will "impair their ability to exercise their right of free speech and association...."

■ When accepted as true, these allegations satisfy Colorado's injury-in-fact requirement. The employees and associations specifically allege that they were using a state-provided service—some for decades—but are now precluded from doing so by a change in government policy and practice. In order to show an injury-in-fact, it is unnecessary for the plaintiffs to credibly allege that they have an automatic right to receive

a payroll deduction or even that they would likely be successful in receiving one. It is enough if they claim they were deprived of a right to apply for a deduction and receive a non-arbitrary ruling on their application. Thus, we hold that the petitioners alleged injuries sufficient to satisfy the injury-in-fact prong of the standing test.

### 3. Properly Named Defendants

 Finally, we turn to the question of whether the Governor is a properly named defendant. Because he has been sued in his official capacity, we find that he is. As the court of appeals has correctly recognized, an "official capacity suit" is "merely 'another way of pleading an action against the entity of which an officer is an agent.'" *Oten v. Colo. Bd. of Soc. Srvs.*, 738 P.2d 37, 40 (Colo. App.1987) (quoting *Monell v. Dept. of Soc. Srvs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). The Governor of Colorado is unique in that he is the "supreme executive," and it is his responsibility to ensure that the laws are faithfully executed. Colo. Const. art IV, § 2 ("The supreme executive power of the state shall be vested in the governor, who shall take care that the laws be faithfully executed."). Therefore, when a party sues to enjoin or mandate enforcement of a statute, regulation, ordinance, or policy, it is not only customary, but entirely appropriate for the plaintiff to name the body ultimately responsible for enforcing that law. Moreover, when that body is an administrative agency, or the executive branch of government, or even the state itself, the Governor, in his official capacity, is a proper defendant because he is the state's chief executive. For litigation purposes, the Governor is the embodiment of the state.

In each of the following cases, the Governor of Colorado was a named defendant. The variety of the cases illustrates how widespread and well-established this practice is. *E.g., Romer v. Evans*, 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (challenging validity of voter initiated constitutional amendment under federal equal protection); *Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980) (challenging constitutionality of living conditions at state penitentiary); *City of Commerce City v. State*, 40 P.3d 1273 (Colo. 2002) (home-rule city challenging validity of statute regulating the use of automated vehicle identification systems); *Morrissey v. State*, 951 P.2d 911 (Colo.1998) (challenging constitutionality of a voter initiated constitutional amendment pertaining to term limits); *Romer v. Board of County Comm'rs*, 897 P.2d 779, 781 (Colo.1995) (challenging a Department of Social Service's interpretation of a statute); *Dempsey v. Romer*, 825 P.2d 44 (Colo.1992) (state employees challenging constitutionality of a statute setting salary levels); *Urbish v. Lamm*, 761 P.2d 756 (Colo. 1988) (challenging constitutionality of statute and Department of Social Services Rule); *Partridge v. State*, 895 P.2d 1183 (Colo.App. 1995) (challenging Racing Commission decision to suspend an owner/trainer).

 In fact, this court has decided a suit procedurally similar to this one in which state employees sued the Governor, the Executive Director of the Personnel Department, the Personnel Department itself, and the State Personnel Board. *Colo. Ass'n of Pub. Employees v. Lamm*, 677 P.2d 1350 (Colo.1984). In that case, the Personnel Department promulgated rules in accordance with the newly-passed State Personnel System Act. *Id.* at 1352. The employees then challenged both the Act and the Rules, claiming that they were unconstitutional for a variety of reasons. *Id.* at 1353. The propriety of naming the Governor as a defendant was not challenged even though there was neither an executive order involved nor any other specific action on the part of the Governor. This case and the many others like it clearly demonstrate that when challenging the constitutionality of a statute or the lawfulness of an administrative rule, the Governor is an appropriate defendant due to his constitutional responsibility to uphold the laws of the state and to oversee Colorado's executive agencies. Therefore, we hold that the Governor in his official capacity is an appropriate defendant for all of the claims in this case.

### III. Remand

Although appellate courts review trial courts' rulings on motions to dismiss *de novo*,

we return this case to the trial court for further proceedings. In this case, the Governor moved to dismiss the case, arguing that the petitioners lacked standing and that their claims were moot. His brief also argued, in detail, that the petitioners' claims must fail under C.R.C.P. 12(b)(5) because each failed to state a claim upon which relief could be granted. The Personnel Director also urged the trial court to dismiss the case, arguing that, even when the allegations of the complaint were taken as true, none of the claims against the Personnel Director's Policy stated a claim upon which relief could be granted.

Despite the number of claims and the variety of arguments raised by the defendants, the trial court dismissed the complaint with prejudice and stated no grounds for its order. The court of appeals sought to find a common basis for dismissing all of the petitioners' claims, and arrived at the standing analysis that we have reversed in this opinion.

In the interests of judicial economy, we direct the court of appeals to return this case to the district court. The defendants, if they choose, may file new motions to dismiss based on grounds other than those already resolved on appeal. Otherwise, the defendants should answer the complaint and the case should proceed to trial.

## IV. Conclusion

Because the employees and employee associations have satisfied both the injury-in-fact and legally protected right prongs of the standing test for all claims, we hold that they have standing to challenge the payroll deduction Policy. Moreover, we hold that not only the Personnel Director, but also the Governor, is a properly named defendant in this case. Hence, we reverse this judgment of the court of appeals and remand the case with directions to return the case to the trial court for further proceedings consistent with this opinion.