2013 COA 148

Richard L. ANDERSON; Stephanie Allen; James N. Dreisbach, M.D.; Nicholas G. Muller; Ray Blum, M.D.; K. Mason Howard, M.D.; Susan E. Ljunghag, M.D.; Richard Schaler, M.D.; and Richard Parker, M.D., Plaintiffs–Appellants,

v.

John W. SUTHERS, in his official capacity as Colorado Attorney General; HealthONE, d/b/a/ The Colorado Health Foundation, a Colorado nonprofit corporation; HealthONE of Denver, Inc., a Colorado corporation; and HCAHealthONE, LLC, a Colorado limited liability company, Defendants–Appellees.

Court of Appeals No. 12CA2313

Colorado Court of Appeals, Div. VII.

Announced November 7, 2013

Jay Horowitz, Esq., PC, Jay Horowitz, Denver, Colorado; Ridley, McGreevy & Winocur, PC, Patrick Ridley, Kristen M. Frost, Denver, Colorado; Berenbaum Weinshienk PC, Frank Porada, Denver, Colorado; Azizpour Donnelly LLC, Katayoun Donnelly, Denver, Colorado, for Plaintiffs–Appellants

W. Eric Kuhn, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee John W. Suthers

Greenberg Traurig, LLP, Troy A. Eid, Maranda S. Compton, Harriet A. McConnell, Denver, Colorado, for Defendant–Appellee HealthONE, d/b/a/ The Colorado Health Foundation

Polsinelli PC, Sean R. Gallagher, Megan E. Harry, Denver, Colorado, for Defendants–Appellees HealthONE of Denver, Inc. and HCA–HealthONE, LLC

Opinion by JUDGE ROY *

¶ 1 Plaintiffs, Richard L. Anderson, Stephanie Allen, James N. Dreisbach, M.D., Nicholas G. Muller, Ray Blum, M.D., K. Ma-

---

* Sitting by assignment of the Chief Justice under the provisions of Colo. Const. art. I, § 5(3), and

§ 24-51-1105, C.R.S., 2013.

son Howard, M.D., Susan E. Ljunghag, M.D., Richard Schaler, M.D., and Richard Parker, M.D., appeal the trial court's judgment dismissing the action as moot. The plaintiffs are challenging the Office of the Colorado State Attorney General's (OAG) approval of a transaction between The Colorado Heath Foundation, a Colorado nonprofit corporation (the seller), and HealthONE of Denver, Inc. (the purchaser), by which the seller sold to the purchaser its interest in HealthONE Health Care System (the joint venture). The joint venture owns and operates several hospitals in the Denver metropolitan area. We affirm the trial court's judgment, but on different grounds than those relied on by the trial court.

## I. Background and Procedural History

¶ 2 In 1995, the seller and the purchaser formed a joint venture to own and manage the hospitals. The seller owned forty percent of the common stock but had a fifty percent voting interest, and the purchaser owned the remainder.

¶ 3 In June 2011, the seller and the purchaser entered into, and publicly announced, an agreement by which the seller would sell all of its interest in the joint venture to the purchaser for 1.46 billion dollars. In August 2011, the parties submitted their agreement to the OAG for review and approval under the Hospital Transfer Act, sections 6–19–101 to –407, C.R.S.2013 (the Act).

¶ 4 The OAG concluded that the Act did not apply to the transaction, but decided to review it under its common law authority.[1] See § 2–4–211, C.R.S.2013 (adoption of the common law of England prior to the fourth year of James the First with exceptions (1607)); § 24–31–101(5), C.R.S.2013 (recognizing that the attorney general has all powers by the common law regarding all trusts established for charitable, educational, religious, or benevolent purposes).

¶ 5 The OAG then conducted public hearings to receive comments. The plaintiffs attended and expressed concern about or opposition to the transaction. Based in part on the public comments, the OAG urged the seller and the purchaser to modify the agreement, which they did. On October 13, 2011, the OAG issued a decision approving the modified agreement. On the same day, the transaction closed.

¶ 6 The plaintiffs then commenced these proceedings appealing the OAG's approval of the agreement pursuant to C.R.C.P. 106(a)(4) and sections 6–19–407(3) and 24–4–106(4), C.R.S.2013. They alleged, inter alia, that the agreement required the seller, which is a charitable trust, to abandon its charitable mission of protecting Colorado citizens and patients by surrendering its participation in the management of the largest hospital system in the state. More specifically, plaintiffs asserted that the OAG was incorrect in concluding that the agreement was not subject to the Act and sought an order directing the OAG to withdraw its approval of the agreement and reconsider it pursuant to the Act.

¶ 7 The complaint contains 109 allegations spread over thirty pages; however, it alleges only the following injuries or damages:

● All future decisions concerning the Joint Venture and its hospitals, including such critical matters as whether to sell the hospitals or to limit the range of medical care historically furnished by the hospitals, will be made by [the purchaser] and [the purchaser] alone. The [seller] which, since the formation of the Joint Venture in 1995, had been vested with a level of control over these and other critical matters equivalent to the level of control vested in [the purchaser], no longer will have control.

● Furthermore, all future decisions concerning the Joint Venture, and its hospitals, including the type of critical matters referenced above, inevitably, and properly from [the purchaser's] perspective will be dictated by [the purchaser's] decisions concerning what best serves the interests of [the purchaser's] stockholders. [the purchaser's] stockholders' interests, i.e. their interest in

---

1. The Act regulates "the sale, transfer, lease, exchange, or other disposition of fifty percent or more of the assets of a hospital." § 6–19–102(1), C.R.S.2013. The OAG concluded that the agreement dealt with the sale of a minority interest in a hospital holding company, "not the sale of fifty percent or more of the assets of a hospital."

[the purchaser] maximizing it profits, may, of course, be quite different than, even in conflict with, the interests of Colorado's citizens and patients, numbering in the hundreds of thousands on an annual basis, who have relied in the past and hope to continue to rely in the future upon the Joint Venture's hospitals for medical care.

● [T]he OAG's October 13, 2011, Decision extending such approval, may have adverse implications for the [seller's] tax exempt status as a public charity during the lifetime of the Joint Venture and those implications could threaten Plaintiffs personally, as more specifically explained below. [No explanation appears.]

¶ 8 The OAG filed a motion to dismiss pursuant to C.R.C.P 12(b) asserting: (1) the court lacked jurisdiction; (2) the plaintiffs lacked standing to bring the action; and (3) the claims presented were moot. The trial court denied the motion to dismiss for want of jurisdiction, concluding that the OAG was acting in a judicial or quasi-judicial capacity and, therefore, the trial court had jurisdiction under C.R.C.P. 106(a)(4).[2] The trial court further ruled that the plaintiffs, who were former directors or volunteers of the seller, had standing, in the nature of "public interest standing," and requested briefing on whether the claims were moot.

¶ 9 Following receipt of the briefs, the trial court dismissed the plaintiffs' claims as moot and concluded, relying on *Zoning Bd of Adjustment v. DeVilbiss*, 729 P.2d 353, 357 (Colo.1986), that the public interest exception to mootness did not apply because the plaintiffs did not seek a preliminary injunction before the transaction closed.

¶ 10 This appeal followed.

## II. Standing

■ ¶ 11 A party has standing to bring a claim if the party (1) incurred an injury-in-fact (2) to a legally protected interest, as contemplated by . regulatory, statutory or constitutional provisions. *Ainscough v. Owens*, 90 P.3d 851, 855 (Colo.2004); *Brotman v. E. Lake Creek Ranch, L.L.P.*, 31 P.3d 886, 890 (Colo.2001); *Wimberly v. Ettenberg*, 194 Colo. 163, 570 P.2d 535 (1977); *Olson v. City of Golden*, 53 P.3d 747, 750 (Colo.App.2002).

### A. Standard of Review

■ ¶ 12 Standing is a threshold jurisdictional question. *Ainscough*, 90 P.3d at 855; *Colorado Medical Soc'y v. Hickenlooper*, 2012 COA 121, ¶ 19, —— P.3d ——. Because standing is a jurisdictional prerequisite, a court may raise the issue sua sponte at any stage of the proceedings. *Rocky Mountain Animal Def. v. Colorado Div. of Wildlife*, 100 P.3d 508, 513 (Colo.App.2004); *see also CF & I Steel Corp. v. Colorado Air Pollution Control Comm'n*, 199 Colo. 270, 274, 610 P.2d 85, 88 (1980) (approving the court of appeals' decision to raise standing issue sua sponte); *see also Director v. Newport News Shipbuilding & Dry Dock Co.*, 514 U.S. 122, 125, 115 S.Ct. 1278, 131 L.Ed.2d 160 (1995).

■ ¶ 13 We review the issue of standing de novo. *Barber v. Ritter*, 196 P.3d 238, 245 (Colo.2008); *Ainscough*, 90 P.3d at 855; *Colorado Medical Soc'y*, ¶ 18.

### B. Analysis

■ ¶ 14 The plaintiffs' recitation of injury or damage is described above. The plaintiffs claim they have standing to represent the public as beneficiary of the seller because of their "close and lengthy association with the [seller]." They also claim that they have a "direct interest in the activities of the hospitals and a special interest in the proper administration of the hospitals in accordance with [the seller's] charitable purposes." We are not persuaded that these relationships, no matter how close and longstanding, endow

---

**2.** We do not agree with the trial court's conclusion in this regard because the OAG was not determining "the rights, duties, or obligations of specific individuals on the basis of the application of presently existing legal standards or policy considerations to past or present facts developed at a hearing conducted for the purpose of resolving the particular interests in question." *Cherry Hills Resort Dev. Co. v. City of Cherry Hills Vill.*, 757 P.2d 622, 625 (Colo.1988). Instead, in our view, the OAG held a hearing to receive public comment on a question presented to it under its common law authority to supervise charitable foundations.

the plaintiffs with standing to sue the seller or the OAG over the transaction.

¶ 15 The plaintiffs have not alleged any direct or indirect injury to themselves personally. Instead, they assert that the transaction may compromise the seller's tax-exempt status and will turn complete control of the hospitals to a for-profit corporation which will answer to its stockholders and may not act in the public interest. However, the possibility of alleged future injury is too remote to establish standing. *See Olson*, 53 P.3d at 750–52 (holding that the plaintiff did not have standing as a taxpayer to challenge the actions of an urban renewal authority because the plaintiff's alleged injury of possible decreased tax revenues to the city of Golden was speculative and could not be determined until a remote time in the future).

¶ 16 Even if we assume the plaintiffs allege that the seller or the public suffered an injury to a legally protected interest, they lack standing to represent the seller or the public. Ronald Chester & George G. Bogert, *The Law of Trusts and Trustees* § 414 (3d ed. 2005) ("As a general rule, no private citizen can sue to enforce a charitable trust merely on the ground that he believes he is within the class to be benefited by the trust and will receive charitable or other benefits from the operation of the trust."). Rather, "the beneficiary [of a charitable trust] is the unspecified, indefinite general public to whom the social and economic advantages of the trust accrue." *Denver Found. v. Wells Fargo Bank, N.A.*, 163 P.3d 1116, 1125 (Colo.2007) (citing Restatement (Second) of Trusts § 364 cmt. a (1959)). The OAG is responsible for supervision of charitable trusts and their trustees, and has the authority to enforce the terms of the trust agreement or charter through litigation, if necessary. *Id.* at 1126 (citing *The Law of Trusts and Trustees* § 411; Restatement (Second) of Trusts § 391 cmt. a); *Ireland v. Jacobs*, 114 Colo. 168, 179, 163 P.2d 203, 208 (1945); *see also* § 2–4–211; § 24–31–101(5); Mark L. Ascher, William F. Fratcher, & Austin W. Scott, *Scott and Ascher on Trusts* § 37.3.10 (4th ed.2008).

¶ 17 Colorado has not adopted general public interest standing, and we are not inclined to do so here. This is not a case where the OAG has failed to supervise or enforce the terms of a charitable trust. The OAG made specific findings that the transaction did not harm the seller, and it imposed procedures designed to ensure that the seller's tax-exempt status would not be jeopardized. § 6–19– 403 (1)(i). Notably, these findings mirror certification requirements of the Act. *See* § 6–19–403(1), C.R.S.2013.

¶ 18 In addition, while concluding that the Act did not apply, the OAG considered most, if not all, of the factors the Act requires, including that the transaction is in the public interest. The OAG concluded that Colorado communities will continue to have access to affordable health care, and that the seller was receiving fair market value for its interest in the joint venture. *See* § 6–19– 403 (1)(a)-(f). There is no indication that the seller is abandoning its charitable purpose to promote public health in Colorado. *Cf. Kapiolani Park Pres. Soc'y v. City & Cnty. of Honolulu*, 69 Haw. 569, 751 P.2d 1022, 1025 (1988) (members of the public had standing to sue for breach of trust when the attorney general actively joined in supporting the alleged breach of trust); *In re Hill*, 509 N.W.2d 168, 172 (Minn.Ct.App.1993) (trustees had standing to amend a charitable foundation's articles of incorporation when the attorney general elected not to participate).

¶ 19 Parties with special interests in the benefits of a charitable trust have been accorded standing to enforce the trust, but only when they are "entitled to benefits different from those to which members of the public are entitled generally." *Scott and Ascher on Trusts* § 37.3.10. The plaintiffs assert they have a special interest in the seller as former board members and volunteers, but they do not assert an interest as expectant beneficiaries nor do they assert that they are entitled to any benefits from the seller. *Cf. Stern v. Lucy Webb Hayes Nat'l Training Sch.*, 381 F.Supp. 1003, 1007 (D.D.C.1974) (indigent patients of hospital had standing to allege breaches of trust by directors of charitable hospital); *San Diego County Council v. City*

*of Escondido,* 14 Cal.App.3d 189, 92 Cal. Rptr. 186, 196–97 (1971) (county council of Boy Scouts of America had standing to enforce a trust where trust property was to be used for the benefit of the scouts in the local community); *see also The Law of Trusts and Trustees* § 414.

¶ 20 Likewise, employees, managers, and other agents of a charitable institution do not typically have standing to sue to enforce the provisions of a charitable trust. *See Barker v. Hauberg,* 325 Ill. 538, 156 N.E. 806, 810 (1927); *Morris v. Thomas,* 161 N.C.App. 680, 589 S.E.2d 419, 423 (2003) (former directors of a charitable foundation lack standing to assert derivative claims); Restatement (Second) of Trusts § 391 cmt. d (1959); *Scott and Ascher on Trusts* § 37.3.10.

¶ 21 While some states accord standing to community members who are interested in promoting a public trust's charitable purposes and merely hope to receive some charitable benefits, Colorado does not. *Cf. Schell v. Leander Clark Coll.,* 10 F.2d 542 (N.D.Iowa 1926) (church member interested in educational charity founded by the church permitted to enjoin waste, pending enforcement by the Attorney General); *City of Paterson v. Paterson Gen. Hosp.,* 97 N.J.Super. 514, 235 A.2d 487, 495 (Ct.Ch.Div.1967) (city and two of its residents had standing to sue to prevent defendant hospital from changing its location); *see also The Law of Trusts and Trustees* § 414.

¶ 22 Plaintiffs' reliance on *Brotman,* 31 P.3d at 892–894, and *Ainscough,* 90 P.3d at 855–56, is misplaced. These cases do not support their standing as representatives of the public beneficiaries of the seller.

¶ 23 *Brotman* does not hold that a member of the general public would have standing to sue to enforce a charitable trust benefitting the public at large. Instead, *Brotman* holds that a landowner adjacent to public school trust lands is not a beneficiary of the school lands trust, and thus does not have standing to sue to enforce the terms of the trust. 31 P.3d at 894–95. The *Brotman* court reversed the division of this court that had granted the plaintiff standing as a member of the public because the only beneficiaries of the school lands. trust are the common schools. *Id.* As in *Brotman,* the plaintiffs here have no beneficial interest in the seller greater than, or distinct from, that held by the general public. Therefore, they have no standing to challenge the transaction here.

¶ 24 *Ainscough* does, indeed, state: "In Colorado, parties to lawsuits benefit from a relatively broad definition of standing." 90 P.3d at 855. However, the opinion clarifies that plaintiffs must suffer an injury in fact to have standing. *Id.* at 856 ("[W]e have interpreted *Wimberly* to confer standing when a plaintiff argues that a governmental action that harms him is unconstitutional."). The *Ainscough* plaintiffs—state employees and their labor organizations—had standing because their ability to collect union dues was impaired by a new state policy that no longer permitted automatic payroll deductions. *Id.* at 857–58. This case is distinguishable from *Ainscough* because, as explained above, the plaintiffs have not suffered an injury to a legally protected interest.

¶ 25 We conclude that the plaintiffs do not have a special interest in the seller distinct from that of the general public and have not alleged an injury to their legally protected interests. Thus, they do not have standing. *Id.* at 855; *Brotman,* 31 P.3d at 892–894; *see also Scott and Ascher on Trusts* § 37.3.10; *The Law of Trusts and Trustees* § 414. Therefore, Colorado courts do not have jurisdiction over their claims.

¶ 26 The judgment is affirmed.

JUDGE HAWTHORNE and JUDGE BOORAS concur.