25CA0449 Adams County v Board of Education 04-09-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA0449
City and County of Denver District Court No. 23CV31302
Honorable Jon J. Olafson, Judge

---

Adams County School District 14 and Board of Education of Adams County
School District 14,

Plaintiffs-Appellants,

v.

Colorado State Board of Education and University Preparatory Schools,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE PAWAR
Johnson and Gomez, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 9, 2026

---

Joseph A. Salazar, Commerce City, Colorado; Semple, Farrington, Everall &
Case, P.C., Jonathan P. Fero, Denver, Colorado, for Plaintiffs-Appellants

Philip J. Weiser, Attorney General, Michelle Berge, First Assistant Attorney
General, Joseph Peters, Senior Assistant Attorney General, Jenna Zerylnick,
Assistant Attorney General, Denver, Colorado, for Defendant-Appellee Colorado
State Board of Education

Sparks Willson, P.C., Eric V. Hall, Julie B. Petersen, Colorado Springs,
Colorado, for Defendant-Appellee University Preparatory Schools

¶ 1     In this case, a local school district filed five claims alleging that the Colorado State Board of Education (State Board) violated various statutes and the state constitution. The district court dismissed four claims for lack of jurisdiction and one on the merits. The school district appeals and we affirm, concluding that the district court lacked jurisdiction over all five claims.

## I.     Background

¶ 2     The issues in this appeal revolve around the establishment of charter schools — specifically, a local school district's authority to approve charter schools and the State Board's authority to supervise that process. So we begin with an overview of that process and the sometimes overlapping authority of local school districts and the State Board.

### A.     Charter Application Process and Chartering Authority

¶ 3     To create a charter school, a charter applicant must apply to the chartering authority for the school district where the school will be located. § 22-30.5-107(1)(b), C.R.S. 2025. Often, as was initially the case here, the school district is the exclusive chartering authority, which means the charter applicant must apply to the district. If the district approves the application, the district then

1

negotiates a contract with the charter applicant based on the parameters of the approved application that establishes how and where the school will operate. *See* § 22-30.5-105(1)(a), C.R.S. 2025; *Colo. State Bd. of Educ. v. Brannberg*, 2023 CO 11, ¶ 22.

¶ 4 If the district denies the application, the charter applicant can appeal to the State Board. § 22-30.5-107(3). Proper grounds for appeal include the denial of an application or the "unilateral imposition of conditions on a charter applicant." § 22-30.5-108(2), C.R.S. 2025. If the State Board disagrees with the district's action, it can explain why and remand to the district with directions to reconsider the action. § 22-30.5-108(3)(a). Upon reconsideration, if the district again denies the application or unilaterally imposes conditions on the charter applicant, the applicant can appeal a second time to the State Board. § 22-30.5 108(3)(c). On the second appeal, the State Board can order the district to approve the application or remove the conditions. § 22-30.5-108(3)(d).

¶ 5 The State Board also has the authority to revoke a school district's exclusive chartering authority if certain conditions are met. § 22-30.5-504(7.5), C.R.S. 2025. Revocation results in the state charter school institute (Institute), an independent state

agency, and the district having concurrent chartering authority in the district, which means that a charter applicant can apply to *either* the district or the Institute for a charter. § 22-30.5-504(2)-(3); *Boulder Valley Sch. Dist. RE-2 v. Colo. State Bd. of Educ.*, 217 P.3d 918, 922 (Colo. App. 2009). A district whose exclusive chartering authority has been revoked can apply for reinstatement of exclusive authority to the State Board, which must grant the application if certain conditions are met. § 22-30.5-504(5).

¶ 6 With the relevant legal landscape established, we turn to what happened here.

## B. Litigation Before the State Board

¶ 7 In this case, University Preparatory Schools (UPrep) applied to Adams County School District 14 (Adams 14) for a charter. At the time, Adams 14 had exclusive chartering authority. Adams 14 approved the application, and the two parties began negotiating the contract to establish the UPrep charter school. But negotiations broke down, and Adams 14 rejected the proposed contract.

¶ 8 UPrep appealed to the State Board, which ordered Adams 14 to "reconsider its position" on whether the contract should be

approved. In the wake of this order (first charter order), Adams 14 and UPrep again failed to enter into a contract.

¶ 9 UPrep appealed again to the State Board. The State Board ordered the parties to resolve any issues necessary to permit UPrep's charter school to open. Despite this order (second charter order), the parties again failed to enter into a contract.

¶ 10 UPrep then requested that the State Board revoke Adams 14's exclusive chartering authority based on its alleged failures to comply with the State Board's two charter orders. The State Board held a hearing and determined that the statutory conditions for revocation were met. The State Board therefore revoked Adams 14's exclusive chartering authority (revocation order).

## C.    District Court Case

¶ 11 After the revocation order, Adams 14 sued the State Board and UPrep in the district court. The complaint alleged five claims. Claim one was a declaratory judgment claim under C.R.C.P. 57 challenging the charter orders' validity on statutory and constitutional grounds. Claims two through five were all brought under C.R.C.P. 106(a)(4) and challenged the revocation order. The Rule 106 claims alleged, respectively, that

4

- a State Board member should have recused himself from the revocation proceedings (claim two);

- the revocation order violated statutes and the Colorado Constitution (claim three);

- the State Board applied an incorrect legal standard in the revocation proceedings (claim four); and

- insufficient evidence supported the revocation order (claim five).

¶ 12    The State Board moved to dismiss all five claims, arguing that the district court lacked jurisdiction to address the declaratory judgment claim and that the C.R.C.P. 106(a)(4) claims failed to state a claim.  The court agreed with the first argument and dismissed claim one for lack of subject matter jurisdiction.  The court held that even though the claim was pled as one for declaratory judgment, it was cognizable only as a C.R.C.P. 106(a)(4) claim and was untimely under that rule's jurisdictional time bar.  The court then denied the motion to dismiss claims two through five (the revocation claims).

¶ 13    After claim one was dismissed, the State Board and UPrep answered the complaint, and the parties agreed to brief the

jurisdictional and merits issues relevant to the revocation claims. In their briefing, the State Board and UPrep argued that Adams 14 lacked standing to bring the revocation claims and that the claims failed on their merits. The court dismissed all but one part of one revocation claim for lack of standing. The single issue the court addressed on the merits was the part of claim three that alleged that the State Board exceeded its jurisdiction by adjudicating the revocation request. The court ruled that the State Board's exercise of jurisdiction was proper under the statute and therefore dismissed this part of claim three on the merits.

¶ 14 Adams 14 appeals. It first challenges the dismissal of claim one, arguing that the court had jurisdiction for various reasons. Adams 14 also challenges the dismissal of the revocation claims. We conclude that all of Adams 14's claims were subject to dismissal for lack of standing or other jurisdictional defects. We therefore affirm on slightly different grounds than those the district court relied on. *See Taylor v. Taylor*, 2016 COA 100, ¶ 31 ("An appellate court may . . . affirm on any ground supported by the record.").

## II. Claim One: Charter Orders

¶ 15 We review a district court's dismissal for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1) as a mixed question of fact and law, reviewing factual findings for clear error and legal conclusions de novo. *See Ferguson v. Spalding Rehab., LLC*, 2019 COA 93, ¶ 7. When, as here, the facts relevant to the jurisdictional ruling are undisputed, our review is purely de novo. *Id.*

¶ 16 The district court dismissed claim one because it determined that the charter orders were quasi-judicial decisions and therefore could be challenged under only C.R.C.P. 106(a)(4), not C.R.C.P. 57. Because claim one was untimely under C.R.C.P. 106(b), the court ruled it was jurisdictionally barred.

¶ 17 While quasi-legislative actions are challengeable in declaratory judgment claims under C.R.C.P. 57, quasi-judicial actions are reviewable only as C.R.C.P. 106(a)(4) claims. *Freed v. Bonfire Ent. LLC*, 2024 COA 65, ¶ 12. Adams 14 contends that the charter orders were quasi-legislative actions and were therefore challengeable in a declaratory judgment action under C.R.C.P. 57. We disagree.

¶ 18    Quasi-legislative actions usually apply public policy principles to permanent or general issues in a prospective manner. *See Cherry Hills Resort Dev. Co. v. City of Cherry Hills Village*, 757 P.2d 622, 625 (Colo. 1988). They are "not normally restricted to identifiable persons or groups." *Id.*

¶ 19    In contrast, quasi-judicial actions look like adjudicatory actions that courts might engage in. *See id.* at 625-26. These actions often determine the rights, duties, or obligations of specific parties based on the application of legal standards or policy considerations. *Id.* at 625.

¶ 20    It is clear to us that the charter orders were quasi-judicial actions. The orders adjudicated a specific dispute between two parties, Adams 14 and UPrep, articulating the duties of Adams 14 under the applicable law (section 22-30.5-108). It is not as if the charter orders promulgated a rule that was generally applicable beyond the dispute between Adams 14 and UPrep and then applied that generally applicable rule in this case. Instead, the charter orders merely applied pre-existing law to the dispute between Adams 14 and UPrep.

¶ 21    Nevertheless, Adams 14 argues that the charter orders were quasi-legislative because the State Board effectively wrote new language into the statute that allowed it to resolve additional types of disputes.  Section 22-30.5-108(3) identifies the types of decisions that the State Board has authority to review.  It provides that the State Board can rule on an appeal that "relates to a local board's decision to deny a charter application or to refuse to renew or to revoke a charter or to a local board's unilateral imposition of conditions that are unacceptable to the charter applicant."  § 22-30.5-108(3).  Adams 14 argues that because the charter orders directed contract negotiations, they did not relate to an issue that triggered the State Board's authority under section 22-30.5-108(3).  As we understand it, Adams 14 contends that by issuing the charter orders without the authority to do so, the State Board implicitly added language to section 22-30.5-108(3) that would have authorized the charter orders, therefore making the charter orders quasi-legislative in nature.

¶ 22    But the State Board did not add language to the statute.  Instead, the State Board simply interpreted section 22-30.5-108(3) to mean that it had the authority to issue the charter orders.

9

Adams 14 disagrees with the State Board's interpretation of the statute delineating the State Board's authority. But the mere fact that someone disagrees with a governmental body's interpretation of a statute does not render the governmental body's interpretation quasi-legislative. Indeed, a governmental body's decision on whether it has authority to act under the applicable law is often part of a quasi-judicial decision. *See Brooks v. Raemisch*, 2016 COA 32, ¶ 31 ("Court review of an agency's quasi-judicial decision [includes] 'whether the body or officer has exceeded its jurisdiction . . . .'" (quoting C.R.C.P. 106(a)(4)(I))). So it was here.

¶ 23    We therefore conclude that the State Board's charter orders were quasi-judicial actions that could be challenged under only C.R.C.P. 106(a)(4). The strict jurisdictional time limit for filing a C.R.C.P. 106(a)(4) claim is twenty-eight days after the final decision of the governmental body. C.R.C.P. 106(b); *Brown v. Walker Com., Inc.*, 2022 CO 57, ¶ 42. There is no question that Adams 14 filed all its claims, including claim one, more than twenty-eight days after the charter orders. Consequently, claim one was jurisdictionally barred.

¶ 24     We are not persuaded otherwise by Adams 14's additional attempts to characterize claim one as something other than a straightforward C.R.C.P. 106(a)(4) claim. Adams 14 argues that the charter orders violated its constitutional right to local control of public school instruction and that "constitutional questions and challenges are beyond the scope of review found in C.R.C.P. 106(a)(4)." But Adams 14 concedes that any constitutional challenge was as applied, not facial, and as-applied challenges are proper under C.R.C.P. 106(a)(4). *See Dolan v. Fire & Police Pension Ass'n*, 2017 COA 55, ¶ 40 ("An as-applied challenge to the constitutionality of a regulation is cognizable under C.R.C.P. 106(a)(4) and must be brought within the time limits of C.R.C.P. 106(b).").

¶ 25     As we understand it, Adams 14 also argues that claim one was timely because although it challenged the charter orders, the twenty-eight-day time limit did not start until the State Board revoked Adams 14's exclusive chartering authority for failure to comply with the charter orders. But claim one challenged the validity of the charter orders, not the validity of the revocation

11

order.  Accordingly, the twenty-eight-day time limit began when each of the charter orders were issued.

¶ 26    We therefore affirm the district court's dismissal of claim one because it was jurisdictionally barred under C.R.C.P. 106(b).[1]

### III.  Claims Two Through Five: Revocation Claims

¶ 27    Adams 14 brought its remaining claims under C.R.C.P. 106(a)(4).  Each of them challenged the revocation of Adams 14's exclusive chartering authority, alleging that the revocation proceedings or revocation order violated either a statute or the state constitution.[2]  The district court dismissed one part of one of these claims on its merits and dismissed the remainder of that claim and

---

[1] We recognize that Adams 14 argues it could not have filed claim one any sooner than it did because it suffered no injury from the charter orders until they became a basis for revocation. Alternatively, at oral argument, Adams 14 suggested it was injured by the charter orders themselves as soon as they were issued.  But regardless of what the injury was or when it occurred, there is no question that claim one challenged the validity of the charter orders.  And because the charter orders were quasi-judicial actions, any challenge to their validity had to be brought within twenty-eight days of their issuance.

[2] These claims were timely under C.R.C.P. 106(b) because, unlike claim one that challenged the charter orders, claims two through five challenged the revocation orders, which issued over a year after the charter orders and less than twenty-eight days before Adams 14 filed its complaint in the district court.

the other claims for lack of standing. We conclude that all four claims could have been properly dismissed for lack of standing. *See Anderson v. Suthers*, 2013 COA 148, ¶ 12 (court may raise standing sua sponte at any stage of the proceedings).

## A. General Standing Principles

¶ 28 Standing is a required component of subject matter jurisdiction. *Maralex Res., Inc. v. Chamberlain*, 2014 COA 5, ¶ 8. It requires (1) an injury in fact to (2) a legally protected interest. *City of Arvada ex rel. Arvada Police Dep't v. Denv. Health & Hosp. Auth.*, 2017 CO 97, ¶ 19. For an interest to be legally protected, it is not enough that a statute, a constitutional provision, or the common law confers on the would-be plaintiff a right or privilege. Instead, a legally protected interest exists only if the violation of that right or privilege is actionable. *Id.* at ¶ 20.

¶ 29 C.R.C.P. 106(a)(4) cannot render a violation of a right or privilege actionable, and therefore legally protected, for purposes of establishing standing. The rule is merely a procedural mechanism to recognize rights when standing otherwise independently exists. *See Reeves v. City of Fort Collins*, 170 P.3d 850, 852 (Colo. App. 2007).

13

¶ 30    We review de novo whether a party has standing.  *Maralex*,
¶ 8.

B.    No Standing for Claims Based on Statutory Violations

¶ 31    Claims four and five, and at least parts of claims two and three, allege that the State Board violated various provisions of section 22-30.5-504, which sets out the procedures and requirements for revoking and reinstating a school district's exclusive chartering authority.  We conclude that Adams 14 lacks a legally protected interest in the State Board's adherence to any of these provisions and, therefore, lacks standing to assert these claims.

¶ 32    Our supreme court has identified two ways a school district may have a legally protected interest in the State Board's adherence to a statute.  First, the statute can directly authorize a school district to seek judicial review of an action that allegedly violates the statute.  *Colo. State Bd. of Educ. v. Adams Cnty. Sch. Dist. 14*, 2023 CO 52, ¶ 52.  Second, the statute can expressly incorporate the protections of the State Administrative Procedure Act (APA), which provides the right to judicial review of agency decisions.  *Id.*

¶ 33    Under the first option, the statute need not *explicitly* authorize judicial review. A statute that says nothing about judicial review may nevertheless confer an implied right of action and therefore a legally protected interest. *See City of Arvada*, ¶ 21. But courts are reluctant to speak over legislative silence to find an implied right of action. *Id.* Our supreme court has explained (perhaps paradoxically) that where the legislature has declined to explicitly authorize a claim, an implied right to bring one can be found only if there is "a 'clear expression' of legislative intent" to authorize it. *Id.* at ¶ 22 (quoting *State v. Moldovan*, 842 P.2d 220, 227 (Colo. 1992)).

¶ 34    Section 22-30.5-504 neither explicitly authorizes suit to enforce any of its provisions nor incorporates APA protections. In other words, there is no *explicit* legally protected interest in the State Board's compliance with section 22-30.5-504.

¶ 35    Nevertheless, Adams 14 suggests that it has a legally protected interest in the State Board exercising its authority under section 22-30.5-504 in a nonarbitrary and legal manner. As we understand it, Adams 14 argues that the statute contains the requisite clear expression of legislative intent to implicitly authorize a right of action to enforce section 22-30.5-504. But the only provisions

15

Adams 14 identifies that might exhibit this clear expression are those requiring a public revocation hearing and a written explanation of the State Board's revocation decision. Adams 14 does not explain how these provisions constitute a clear expression of legislative intent to create an implied right of action. We therefore deem this implied right-of-action contention unsupported by substantial argument and need not address it further. *See Andres Trucking Co. v. United Fire & Cas. Co.*, 2018 COA 144, ¶ 34 (observing that we decline to address contentions that lack any meaningful explanation).

¶ 36 In sum, Adams 14 does not have a legally protected interest in the State Board's adherence to section 22-30.5-504, whose violation forms the basis of claims four and five, and at least parts of claims two and three. Adams 14 therefore lacks standing to assert these

claims, and the district court properly dismissed them for lack of subject matter jurisdiction.[3]

C. No Standing for Claims Based on Constitutional Violations

¶ 37    Having concluded that Adams 14 lacked standing for its statute-based revocation claims, we are left with any parts of claims two and three that might be based on constitutional violations.

¶ 38    The district court addressed a possible constitutional dimension to claim two, the claim based on the non-recusal of a State Board member. We do not fault the district court for doing so. But we perceive no constitutional dimension to this claim.

¶ 39    Adams 14's operative complaint alleged that the board member's refusal to recuse violated its "statutory right to due process." In its briefs before the district court, Adams 14 did not identify any constitutional provision implicated by the board member's participation in the revocation proceedings. And Adams

_____

[3] We recognize that the district court addressed the merits of Adams 14's claim that the State Board exceeded its statutory revocation authority, characterizing it as a reviewable challenge to the State Board's jurisdiction (the statutory part of claim three). We nevertheless affirm the dismissal of this portion of the claim on the jurisdictional ground of standing. *See Anderson v. Suthers*, 2013 COA 148, ¶ 12 (court may raise standing sua sponte at any stage of the proceedings).

17

14's opening brief on appeal is similarly bereft of any explanation of a constitutional dimension to this claim. We therefore conclude that claim two was purely statutory, and Adams 14 lacked standing to assert it based on the statutory violation analysis above.

¶ 40 This leaves only the constitutional portion of claim three, which alleged that the revocation order violated Adams 14's constitutional right to local control of public education instruction. We agree that local school districts have a legally protected interest in their constitutional right to local control of public education instruction. *See* Colo. Const. art. IX, § 15; *Boulder Valley*, 217 P.3d at 924. However, Adams 14 has not suffered an injury in fact to that legally protected interest.

¶ 41 One of the questions in *Boulder Valley* was whether the State Board's statutory revocation authority was facially unconstitutional because it violated the school district's constitutional right to local control. *Boulder Valley*, 217 P.3d at 929-30. The division upheld the revocation statute, explaining that revoking a school district's exclusive chartering authority does not affect the district's constitutional right to local control of instruction. *Id.*

¶ 42     Applying *Boulder Valley*, the district court here determined that Adams 14 could not have suffered an injury in fact. According to the district court, because revocation does not implicate a district's constitutional right to local control, Adams 14 could not have suffered an injury to that right from the revocation. Adams 14 does not meaningfully challenge this ruling on appeal. That is, Adams 14 does not explain to us how its purported injury was distinguishable from the injury contemplated and rejected in *Boulder Valley*. We therefore affirm the district court's ruling on this issue. *See Andres Trucking*, ¶ 34.

## IV.   Disposition

¶ 43     The district court's judgment dismissing Adams 14's claims is affirmed.

JUDGE JOHNSON and JUDGE GOMEZ concur.