24CA0960 & 24CA0961 Matter of Sewell Properties Trust 07-03-2025

COLORADO COURT OF APPEALS

---

Court of Appeals Nos. 24CA0960 & 24CA0961
Boulder County District Court No. 22PR30177
Honorable Dea M. Lindsey, Judge

---

In re the Matter of Sewell Properties Trust.

Russell Robert McDonald and Dezra L. Lehr-Guthrie,

Appellants,

v.

Robert T. Sewell,

Appellee.

---

ORDERS AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE GOMEZ
Freyre and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 3, 2025

---

Russell Robert McDonald, Pro Se

Dezra L. Lehr-Guthrie, Pro Se

Wade Ash, LLC, Jody J. Pilmer, Greenwood Village, Colorado, for Appellee

¶ 1    In this probate case regarding the Sewell Properties Trust, Dezra L. Lehr-Guthrie and Russell Robert McDonald each appeal the district court's orders approving the termination of the trust and the plan for distributing the trust assets. McDonald also appeals the district court's orders approving a surcharge against his final distribution from the trust assets, and Lehr-Guthrie also appeals the district court's order awarding attorney fees and costs against her. We affirm in part and reverse in part and remand the case with directions.

## I.    Background

¶ 2    The settlor formed the trust in 2011 to hold interests in three real estate investment properties he inherited from one of his sons. The settlor formed three limited liability companies (LLCs), conveyed his interests in the properties to those LLCs, and conveyed interests in the LLCs to the trust.

¶ 3    The settlor named his surviving son, appellee Robert T. Sewell, as trustee. The trust agreement granted the trustee broad discretionary powers, including the power to distribute the trust income and principal to beneficiaries according to three tiers of classifications, to grant access to the LLCs' properties, and to

1

terminate the trust if he determined it had become uneconomical or inefficient to administer. All of the beneficiaries were grandchildren of the settlor. McDonald was named as a beneficiary in the third tier, the lowest tier of priority for distributions. Lehr-Guthrie, his mother, was not named as a beneficiary.

¶ 4 The settlor managed the LLCs until his death in 2018, at which time the trustee took over.

¶ 5 In 2022, the trustee filed a petition to review and settle the trust accounting for 2018 through 2021. McDonald and two other third-tier beneficiaries objected to the petition, asserting, among other things, that the trustee had failed to provide adequate documentation to the trust beneficiaries and had breached his fiduciary duties to them. The district court held a hearing, after which it entered an order determining that the objecting beneficiaries were entitled to balance sheets, profit and loss statements, and tax returns for the LLCs. After the trustee provided the documentation, the court issued an order settling the trust accounting for 2018 to 2021.

¶ 6    In 2023, the trustee filed a petition to review and settle trust accounting for 2022, to which McDonald again objected. After a hearing, the court granted the petition.

¶ 7    The parties filed various pleadings in conjunction with the two petitions. In October and December 2023, the district court entered orders directing McDonald to pay a total of $10,901.16 in attorney fees and costs relating to a subpoena the court found he had improperly issued during the proceedings on the second petition. McDonald didn't pay that fee and cost award.

¶ 8    In January 2024, the trustee sent the beneficiaries a letter notifying them of his intent to terminate the trust, along with a proposed trust property distribution plan. Before the trustee filed a petition to terminate the trust, McDonald preemptively filed an objection to the termination, as well as a petition seeking the trustee's suspension. The court struck McDonald's objection and denied his petition. In the meantime, nine of the trust's twelve beneficiaries — including all of the primary and secondary beneficiaries — expressly consented to the trust's termination and the distribution plan.

¶ 9　　In March 2024, the trustee filed a petition to terminate the trust and settle the final accounting. In the petition, the trustee provided a summary of the trust's financial status and expressed his decision that the trust had become uneconomical and inefficient to administer. The trustee asked the court to approve his accounting for 2023, his decision to terminate the trust, and his distribution of its assets pursuant to the plan of distribution. At the same time, the trustee filed a motion to approve a surcharge of $10,901.16 against McDonald's distribution, the amount of the fee and cost award McDonald still hadn't paid.

¶ 10　　Lehr-Guthrie, who hadn't until that point engaged in the proceedings, and McDonald both filed objections to the petition. No one else filed an objection. The trustee filed a motion to dismiss Lehr-Guthrie's objection on the basis that she lacked standing. In his motion, the trustee also sought attorney fees and costs against Lehr-Guthrie.

¶ 11　　In April 2024, the district court entered an order approving the trustee's accounting for 2023, granting the termination petition, and approving the plan of distribution. As part of its order, the court determined that Lehr-Guthrie lacked standing to object and

4

granted the trustee's request for an award of attorney fees and costs from her. The court also issued separate orders directing Lehr-Guthrie to pay $6,775 in attorney fees and costs and approving the $10,901.16 surcharge against McDonald's distribution.

## II. Analysis

¶ 12 Lehr-Guthrie and McDonald each appeal. We first address Lehr-Guthrie's contentions and then McDonald's contentions.

### A. Lehr-Guthrie's Contentions

¶ 13 Lehr-Guthrie raises four contentions on appeal. First, she contends that the district court erred in determining that she lacked standing to participate in a proceeding regarding the trust. Second, she contends that the court erred by finding the trustee acted within his discretion in making decisions regarding access to the LLCs' properties. Third, she contends that the court erred in approving the termination of the trust. And fourth, she contends that the court erred in granting an award of attorney fees and costs against her without a finding of bad faith. We disagree with the first three contentions but agree with the fourth.

### 1. Standing

¶ 14    We first reject Lehr-Guthrie's challenge to the district court's conclusion that she lacked standing in this proceeding.

¶ 15    In order for a court to have jurisdiction over a dispute, the plaintiff must have standing to bring it. *Ainscough v. Owens*, 90 P.3d 851, 855 (Colo. 2004). A plaintiff must satisfy two criteria to establish standing: (1) they suffered an injury-in-fact, and (2) the injury was to a legally protected interest. *Id.*

¶ 16    The first prong of this test requires "a concrete adverseness which sharpens the presentation of issues that parties argue to the courts." *Id.* at 856 (quoting *City of Greenwood Village v. Petitioners for the Proposed City of Centennial*, 3 P.3d 427, 437 (Colo. 2000)). The second prong "requires that the plaintiff have a legal interest protecting against the alleged injury." *Id.* "This is a question of whether the plaintiff has a claim for relief under the constitution, the common law, a statute, or a rule or regulation." *Id.*

¶ 17    We review issues of standing de novo. *Id.*; *see also In re Estate of Garcia*, 2022 COA 58, ¶ 23.

¶ 18    The Colorado Uniform Trust Code recognizes the right of any "interested person" to bring probate matters before the court.

§ 15-5-201(1), C.R.S. 2024; *see also In re Estate of Little*, 2018 COA 169, ¶ 38. The code defines an "interested person" as "a qualified beneficiary or other person having a property right in or claim against a trust estate, which right or claim may reasonably and materially be affected by a judicial proceeding pursuant to th[e] code." § 15-5-103(10), C.R.S. 2024. An interested person "also includes fiduciaries and other persons having authority to act under the terms of the trust." *Id.* The code also defines a "beneficiary" as a person who either "[h]as a present or future beneficial interest in a trust, vested or contingent," or "holds a power of appointment over trust property" in a capacity other than as trustee. § 15-5-103(4)(a).

¶ 19    Lehr-Guthrie doesn't argue that she is a beneficiary of the trust. Indeed, while the trust agreement identifies Lehr-Guthrie as one of the settlor's children, it doesn't name her as a beneficiary. Nonetheless, she argues that she is an interested person because the trust agreement grants her the right to use and enjoy trust assets.

¶ 20    But the trust agreement grants her no such right. Section 6.1.2.27 of the agreement provides:

> [T]he [t]rustee *may allow* third parties to use and enjoy the trust assets *at the [t]rustee's discretion* and shall be under no obligation to collect a fee or rent for such use. . . . The [s]ettlor specifically identifies the following individuals as third parties that *may* use and enjoy the trust assets *at the trustee's discretion*: . . . DEZRA LEHR-GUTHIRE . . . .

(Emphasis added.)

¶ 21      This language merely allows the trustee, at his discretion, to grant third parties like Lehr-Guthrie permission to use the trust properties. It doesn't confer any right upon Lehr-Guthrie to use the properties or ensure that any such right that is granted will be continued. Thus, it doesn't give Lehr-Guthrie a property right that might qualify her as an "interested person" under section 15-5-103(10). Nor, more generally, does it establish any legally protected interest. *See Ainscough*, 90 P.3d at 855-56; *see also Radke v. Union Pac. R.R.*, 334 P.2d 1077, 1087 (Colo. 1959) (a license to use real property "is not property or a property right, nor does it create a vested right"); *Brotman v. E. Lake Creek Ranch, L.L.P.*, 31 P.3d 886, 895 (Colo. 2001) ("A person who incidentally benefits from the performance of a trust, but who is not a beneficiary, cannot maintain a suit against the trustee to enforce the trust." (quoting

3 Austin Wakeman Scott, *The Law of Trusts* § 200, at 209 (William Fratcher ed., 4th ed. 1987))); *cf. Little*, ¶ 38 (a potential devisee under a will is an interested person); *Taylor v. Taylor*, 2016 COA 100, ¶¶ 16-23 (trust beneficiaries had standing to pursue a claim against one of the trustees).

¶ 22    We therefore conclude that the district court did not err in determining that Lehr-Guthrie lacked standing.

### 2.    Access to Real Estate

¶ 23    Because we agree with the district court's conclusion that Lehr-Guthrie lacked standing, we decline to address her argument that the court erred in assessing the trustee's use of his discretion to make decisions concerning access to the LLCs' properties.  *See Ainscough*, 90 P.3d at 855.

### 3.    Termination of the Trust

¶ 24    Likewise, given Lehr-Guthrie's lack of standing, we decline to address her argument that the district court erred in terminating the trust.  *See id.*

### 4.    Attorney Fee and Cost Award

¶ 25    Next, we address Lehr-Guthrie's contention that the district court erred in awarding fees and costs against her without finding

9

that she acted in bad faith pursuant to section 15-10-605(1), C.R.S. 2024. We agree.

¶ 26 We review the reasonableness of a district court's attorney fee and cost award for an abuse of discretion. *Payan v. Nash Finch Co.*, 2012 COA 135M, ¶ 16; *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1187 (Colo. App. 2011). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, *Nesbitt v. Scott*, 2019 COA 154, ¶ 16, or is based on a misapprehension or misapplication of the law, *In re Estate of Shimizu*, 2016 COA 163, ¶ 15.

¶ 27 However, we review de novo the issue of whether attorney fees and costs are recoverable at all. *See In re Estate of Fritzler*, 2017 COA 4, ¶ 24. Likewise, we review de novo the legal analysis the district court relied on in reaching its decision to award fees and costs. *In re Marriage of Tognoni*, 313 P.3d 655, 661 (Colo. App. 2011); *Bd. of Cnty. Comm'rs v. Kraft Bldg. Contractors*, 122 P.3d 1019, 1022 (Colo. App. 2005). To that end, the district court must make sufficient findings to disclose the basis for its decision and enable a reviewing court to assess the propriety of that decision. *See Brody v. Hellman*, 167 P.3d 192, 206 (Colo. App. 2007); *see also*

*Yaekle v. Andrews*, 169 P.3d 196, 201 (Colo. App. 2007) (reversing an attorney fee award where the district court didn't identify the basis for awarding fees or adequately explain the award), *aff'd on other grounds*, 195 P.3d 1101 (Colo. 2008).

¶ 28    Generally, attorney fees cannot be recovered absent an express statute, court rule, or private contract providing for them. *Hawes v. Colo. Div. of Ins.*, 65 P.3d 1008, 1015 (Colo. 2003).  In his motion to dismiss Lehr-Guthrie's objection, the trustee requested an award of fees and costs pursuant to section 15-10-605(1), asserting that Lehr-Guthrie's attempted participation in the proceeding was done in bad faith.  The trustee didn't cite any other basis for awarding fees or costs.

¶ 29    Section 15-10-605(1) provides that, "[i]f the court determines that any proceedings pursuant to th[e] [probate] code or any pleadings filed in such proceedings were brought . . . or filed in bad faith," it may assess the reasonable attorney fees and costs incurred by other parties in responding to the proceedings or pleadings.  This statute "limit[s] [a] court's ability to award attorney fees [in a probate action] absent some form of bad faith." *Fritzler*, ¶ 28.  Bad faith may include conduct that is arbitrary, abusive, stubbornly

11

litigious, or disrespectful of the truth. *In re Marriage of Roddy*, 2014 COA 96, ¶ 34.

¶ 30    In its order approving the termination of the trust, the district court dismissed Lehr-Guthrie's objection and granted the trustee's request for attorney fees and costs against her. But it didn't state its basis for the fee and cost award or make any related factual findings. Later, after reviewing the trustee's affidavits in support of its request for $6,775 in fees and costs incurred in pursuing dismissal of the objection, the court granted the request and ordered Lehr-Guthrie to pay that amount. Again, however, the court didn't explain its reasoning for the award or make any related factual findings.

¶ 31    We conclude that the district court erred by ordering Lehr-Guthrie to pay $6,775 in attorney fees and costs without explaining its reasoning or making factual findings relating to Lehr-Guthrie's potential bad faith. In the absence of any acknowledgment that a finding of bad faith was required, it's difficult for us to presume that the court implicitly found Lehr-Guthrie had filed her objection in bad faith. And even if we could presume that the court implicitly found bad faith, we cannot assess the propriety of that finding

12

without some explanation for it.  *See Brody*, 167 P.3d at 206; *Yaekle*, 169 P.3d at 201.

¶ 32    We therefore reverse the award of fees and costs against Lehr-Guthrie and remand the case to the district court to redetermine the issue of whether the trustee is entitled to those fees and costs.

## B.    McDonald's Contentions

¶ 33    We next address, and reject, McDonald's contentions that the district court erred in (1) approving the trust termination and final distribution plan and (2) allowing the trustee to impose a surcharge on his distribution.[1]

### 1.    Trust Termination and Distribution Plan

¶ 34    McDonald first contends that the district court erred, for several reasons, in approving the trust termination and final distribution plan.  We disagree.

¶ 35    The interpretation of a trust instrument is a question of law that we review de novo.  *Katherine E. Reece Tr. v. Reece*, 2023 COA

---

[1] To the extent that McDonald raised but didn't fully develop any other issues in his opening brief or raised any new issues in his reply brief, we decline to consider those issues.  *See In re Marriage of Wiggs*, 2025 COA 10, ¶ 45 (declining to consider an undeveloped argument); *Bullock v. Brooks*, 2025 COA 6, ¶ 33 (declining to consider an argument raised for the first time in the reply brief).

89, ¶ 12. Our objective in construing such an instrument is to determine the settlor's intent, which we ascertain "from the entire trust instrument, considering the relevant circumstances and the settlor's reasonable expectations in effect at the time the instrument was executed." *Id.*; *see also Denver Found. v. Wells Fargo Bank, N.A.*, 163 P.3d 1116, 1122 (Colo. 2007).

¶ 36     However, when a trustee has been granted discretionary powers under the terms of a trust instrument, we review the exercise of those powers "according to an abuse of discretion standard, and we will only interfere when discretion has been exercised arbitrarily or capriciously." *Denver Found.*, 163 P.3d at 1123; *accord In re Estate of Sol Brooks Irrevocable Tr. No. 1*, 596 P.2d 1220, 1221 (Colo. App. 1979). This standard "restrains the exercise of our independent review and interpretation save for instances of abuse of discretion, bad faith, dishonesty, or arbitrary action." *Denver Found.*, 163 P.3d at 1123.

### a.     Trust Termination

¶ 37     We first reject McDonald's contention that the district court erred in terminating the trust on the basis that it had become uneconomical to administer.

14

¶ 38    Under the trust code, a trust may be terminated for various reasons.  As relevant here, a trust may expire or be revoked pursuant to its terms.  § 15-5-410(1)(a), C.R.S. 2024.[2]

¶ 39    The settlor's intent, as expressed in section 2.3.4 of the trust agreement, was for the trust to exist "as long as practical" and as long as its existence "remains economically feasible."  Section 4.1.9 further provides, "The trust shall terminate when it has become uneconomical to administer *as determined at the discretion of the [t]rustee.*"  (Emphasis added.)  Moreover, section 7.1.9 states, "If the [t]rustee shall determine, *in the [t]rustee's discretion,* that the trust under this agreement has become uneconomical or inefficient to administer, . . . the [t]rustee may terminate such trust."  (Emphasis added.)

¶ 40    In his petition, the trustee explained that he had reviewed the trust's financial status and determined that it had become uneconomical and inefficient to administer, due in large part to

---

[2] To the extent that McDonald contends the circumstances didn't satisfy any other statutory bases for termination, his contention is irrelevant.  The district court approved the trustee's determination to terminate the trust by its own terms, and we agree with that assessment.

McDonald's objections and ongoing litigation. The trustee also filed detailed accountings relating to each of the trust properties.

¶ 41 The trustee expressed that, while the trust properties had a book value of over $700,000 as of December 2023, most of that value was tied up in the LLCs that owned the properties, and the cash reserves were only about $10,000. The trustee reported that the trust had accrued over $180,000 in legal expenses related to the litigation with McDonald and the other initial objectors, which the trustee described as having been brought "in bad faith" and in a manner that was "unnecessarily litigious." He also reported that McDonald was continuing to raise the same issues in more recent filings and in correspondence to the IRS. The trustee stated that the legal costs had "prevented [him] from contributing to the LLCs for property improvements as anticipated by the [t]rust agreement" and had "stifled plans for the [t]rust's continuation." He further stated that the cash reserves were likely to be depleted by the ongoing litigation and would be insufficient to pay for the maintenance, repairs, and capital contributions needed to preserve the properties as the settlor had intended. Due to the uneconomical status of the trust, the trustee determined that the

best course of action would be to terminate the trust and distribute its assets according to the proposed plan of distribution.

¶ 42 Under the terms of the trust agreement, the trustee had broad discretion to determine whether to terminate the trust on the basis that it had become uneconomical and inefficient to administer. Given the broad discretion permitted by the trust agreement, we may overturn the trustee's determination only if it represents an abuse of discretion. *See Denver Found.*, 163 P.3d at 1123. The trustee made his determination after engaging in a careful review of the trust's financial circumstances; his assessment is supported by the record; and there is nothing to suggest he was acting arbitrarily, capriciously, dishonestly, or in bad faith. *See id.* Accordingly, we won't disturb the portion of the district court's order approving the trustee's request to terminate the trust.

### b.     Trust Accounting

¶ 43 We next reject McDonald's contention that the district court erred in approving the final trust accounting without the submission of a JDF 942 form.

¶ 44 Pursuant to section 15-5-813(3)(a), C.R.S. 2024,

> At least annually and at the termination of the trust, a trustee shall send to the distributees or permissible distributees of trust income or principal, and to other qualified beneficiaries who request it:
>
> (I) A report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation; and
>
> (II) A listing of the trust assets and, if feasible, their respective market values.

¶ 45    Relatedly, Colorado Rule of Probate Procedure 31(a) requires "[a] fiduciary accounting or report [to] contain sufficient information to put interested persons on notice as to all significant transactions affecting administration during the accounting period."  The rule further requires that a trust accounting prepared by a trustee show, with reasonable detail, "[t]he receipts and disbursements for the period covered," "[t]he assets remaining at the end of the period," and "[a]ll other transactions affecting administration during the accounting or report period."  C.R.P.P. 31(b).  And it provides that "[a]ccountings and reports that substantially conform to JDF 942 for decedents' estates . . . will be considered acceptable as to both content and format for the purposes of th[e] rule."  C.R.P.P. 31(c).

¶ 46     McDonald argues that the district court's "acceptance of mere tax returns and balance sheets as sufficient accounting" violated C.R.P.P. 31(c).  That rule, McDonald asserts, required the submission of a JDF 942 form here.

¶ 47     Reviewing this issue de novo, *see People in Interest of B.H.*, 2022 COA 9, ¶ 7 (we review de novo interpretation of court rules), we conclude that McDonald is mistaken for two reasons.  First, C.R.P.P. 31(c) doesn't require the use of JDF 942 or any other specific form for an accounting to be considered sufficient.  Rather, it simply provides that accountings that conform to the JDF 942 form are considered acceptable as to content and format.  It also makes clear that all accountings must comply with the overarching requirements in C.R.P.P. 31(b).  And second, JDF 942, which is intended for reporting on the administration of a decedent's estate, is inapplicable here, as this issue involved the termination of a trust, not the administration of a decedent's estate.  *See* JDF 942SC, Interim/Final Accounting (revised June 2019), https://perma.cc/4V49-PMCD.

¶ 48     Ultimately, we conclude that the trust accounting provided by the trustee in conjunction with his petition — which contained

detailed balance sheets, cash flow statements, profit and loss statements, tax returns, and bank statements — complied with the requirements of section 15-5-813(3)(a) and C.R.P.P. 31. We accordingly do not disturb the district court's acceptance and approval of the trust accounting.

### c. Breach of the Duty of Impartiality

¶ 49 We also disagree with McDonald's assertion that the district court erred by failing to find that the trustee breached the duty of impartiality by proposing an inequitable final distribution plan.

¶ 50 A fiduciary duty arises among parties who share a relationship of trust, confidence, and reliance. *MDM Grp. Assocs., Inc. v. CX Reinsurance Co.*, 165 P.3d 882, 888 (Colo. App. 2007). Certain relationships give rise to fiduciary duties as a matter of law, including the relationship between a trustee and a beneficiary. *Id.*

¶ 51 Issues concerning the nature and scope of a fiduciary duty are legal questions that we review de novo, but issues concerning whether a fiduciary duty has been breached are factual matters that we review for clear error. *Black v. Black*, 2018 COA 7, ¶ 35.

¶ 52 The trust code imposes a duty of impartiality on trustees. Specifically, under section 15-5-803, C.R.S. 2024, "[i]f a trust has

two or more beneficiaries, the trustee shall act impartially in investing, managing, and distributing the trust property, taking into account any differing interests of the beneficiaries." Notably, the duty does not mandate equal distribution of trust property. *See id.*[3]

¶ 53　Under the terms of the trust agreement, the trustee had discretion to make distributions in equal or unequal proportions. In fact, section 4.1.4 of the agreement articulates the settlor's intent that the trustee follow an order of preference for distributing trust property, separating the beneficiaries into groups for primary, secondary, and tertiary consideration for distributions.

¶ 54　With his petition, the trustee submitted a plan of distribution. McDonald contends that this plan violated the duty of impartiality because it gave preferential treatment to some family members over others. It is true that the plan outlined the distribution of LLC interests and cash assets, giving greater shares to some beneficiaries than others. But, under the trust agreement, the

---

[3] McDonald asserts that this duty of impartiality can't be overridden by the terms of a trust instrument. But the two cases he cites not only don't support that proposition but don't even address the duty of impartiality. *See In re Estate of McCreath*, 240 P.3d 413 (Colo. App. 2009); *In re Green Valley Fin. Holdings*, 32 P.3d 643 (Colo. App. 2001).

trustee had discretion to make distributions in unequal proportions. And, in doing so, the trustee followed the order of preference for distributions outlined in the trust agreement. Indeed, the primary and secondary beneficiaries all consented to the distribution plan. Thus, the district court appropriately determined that the trustee acted within his discretion and according to the settlor's intent in creating the plan. *See Denver Found.*, 163 P.3d at 1123.

¶ 55    Relatedly, we reject McDonald's argument that the distribution plan violates the trust's purpose of maintaining the properties for future generations. It was within the trustee's discretion to determine how the trust assets would be distributed, and his allocation didn't break up the LLCs that owned interests in the properties; it merely divided the interests in those LLCs among the beneficiaries. And as we've already determined, it was within the trustee's discretion to determine that termination of the trust and distribution of its assets were warranted due to the inefficiencies of continuing to administer the trust — including concerns that McDonald's ongoing litigation would deplete the trust's cash reserves needed to preserve the properties.

¶ 56     We therefore do not disturb the court's order approving the unequal distribution plan.

### d.     Breach of the Duty of Loyalty

¶ 57     We also reject McDonald's argument that the district court erred by approving the trust termination and distribution plan without addressing evidence that the trustee had allegedly breached his duty of loyalty by self-dealing.

¶ 58     As above, we review de novo legal questions regarding the nature and scope of a fiduciary duty, and we review for clear error any factual findings as to whether such a duty has been breached. *Black,* ¶ 35.

¶ 59     A trustee must administer a trust "solely in the interests of the beneficiaries." § 15-5-802(1), C.R.S. 2024. A "transaction involving the investment or management of trust property entered into by the trustee for the trustee's own personal account or that is otherwise affected by a conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction" unless one of the enumerated exceptions applies. § 15-5-802(2).

¶ 60     McDonald asserts that the trustee breached the duty of loyalty by manipulating asset values and distributions to secure himself a

greater trustee fee. In making this argument, McDonald cites the assertions in his own objection to the petition to terminate. However, he does not, either in his opening brief or in his objection, develop the argument that the trustee engaged in self-dealing or point to any evidence in the record that would support that claim. We consequently decline to disturb the district court's order on this basis. *See Woodbridge Condo. Ass'n v. Lo Viento Blanco, LLC*, 2020 COA 34, ¶ 41 n.12 ("We don't consider undeveloped and unsupported arguments."), *aff'd on other grounds*, 2021 CO 56.

## 2. Surcharge

¶ 61 We also reject McDonald's final assertion that the district court erred in approving a surcharge against his distribution.

¶ 62 As noted, earlier in this case, the district court entered orders directing McDonald to pay a total of $10,901.16 in attorney fees and costs to the trustee. McDonald never appealed those orders, and, despite the trustee's attempts to collect those amounts from McDonald, he never paid them. In his motion for a surcharge, the trustee requested to offset McDonald's final trust distribution by the amount of the unpaid attorney fees and costs.

¶ 63    The trustee asserted that he was permitted to offset or surcharge McDonald's distribution pursuant to section 15-12-903, C.R.S. 2024.  That provision is inapplicable here, as it relates to distributions from wills — not trusts.  *See id.*  But we nevertheless conclude that because, under the terms of the trust, distributions made upon termination were to be made at the trustee's discretion and could be made in unequal proportions, it was within the trustee's discretion to offset McDonald's distribution by the amount he owed that the trustee had been otherwise unable to collect.  We therefore do not disturb the district court's order approving the surcharge of $10,901.16 against McDonald's final distribution.

¶ 64    To the extent that McDonald challenges the underlying orders requiring him to pay $10,901.16 in attorney fees and costs, his challenge is untimely.  The orders assessing fees and costs for his conduct during earlier proceedings in this case were final and appealable when those proceedings ended and the fee and cost awards were reduced to a sum certain.  *See Scott v. Scott,* 136 P.3d 892, 896 (Colo. 2006) ("[A]n order of the probate court is final if it ends the particular action in which it is entered and leaves nothing further for the court pronouncing it to do in order to completely

25

determine the rights of the parties as to that proceeding." Further, a probate case "may involve multiple proceedings," each initiated by a petition that defines its scope.); *In re Estate of Gonzalez*, 2024 COA 63, ¶ 15 (an attorney fee and cost order in a proceeding involving the appointment of a personal representative became final when the court made the appointment and awarded one of the parties fees and costs in a sum certain). Thus, McDonald's appeal, filed in May 2024, was untimely to the extent that he intended to appeal the attorney fee and cost orders, which were final and appealable as of December 2023. *See* C.A.R. 4(a)(1) (in a civil case, a notice of appeal must be filed within forty-nine days after entry of the order being appealed); *In re Marriage of James*, 2023 COA 51, ¶ 8 ("The timely filing of a notice of appeal is a jurisdictional prerequisite for appellate review.").

## III. Appellate Attorney Fees and Costs

¶ 65 Lastly, we reject the trustee's request for an award of his appellate attorney fees and costs on the basis that Lehr-Guthrie's and McDonald's appeals are frivolous. We do, however, grant the trustee his costs for McDonald's appeal pursuant to C.A.R. 39(a)

26

and reserve to the district court's discretion whether to grant costs to the trustee for Lehr-Guthrie's appeal.

¶ 66     A court generally may award attorney fees under section 13-17-102(4), C.R.S. 2024, when it finds that a party brought or defended an action (or part of an action) that lacked substantial justification, meaning it was substantially frivolous, groundless, or vexatious.  § 13-17-102(9)(a); *Mitchell v. Ryder*, 104 P.3d 316, 320-21 (Colo. App. 2004).  As relevant here, an appeal may be frivolous as filed if the order being appealed is so plainly correct and the legal authority so contrary to the appellant's position that it is clear there is no appealable issue.  *Castillo v. Koppes-Conway*, 148 P.3d 289, 292 (Colo. App. 2006).  It may also be frivolous as argued based on the appellant's misconduct during the appeal — such as failing to set forth, in a manner consistent with the appellate rules, a coherent assertion of error supported by legal authority.  *Id.*

¶ 67     Under section 13-17-102(6), however, before a court may impose attorney fees against a self-represented party, it must find that the party "clearly knew or reasonably should have known" that their conduct was substantially frivolous, groundless, or vexatious. *See Bockar v. Patterson*, 899 P.2d 233, 235 (Colo. App. 1994).

27

¶ 68    The trustee has not pointed to any facts demonstrating that either Lehr-Guthrie or McDonald clearly knew or reasonably should have known that their appellate arguments were substantially frivolous as filed or as argued.  Moreover, Lehr-Guthrie did prevail on one of her appellate contentions.  We therefore deny the trustee's request for attorney fees incurred on appeal.  *See id.*

¶ 69    Nonetheless, we note that both Lehr-Guthrie's and McDonald's briefs are replete with errors in their citations to case authority, such as repeated citation errors, references to nonexistent quotes, and incorrect statements about the cases (for instance, as noted above, the two cases McDonald cited for a proposition relating to the duty of impartiality don't even reference that duty).  This suggests to us that the briefs may have been drafted with the use of generative artificial intelligence (GAI).  "[U]sing a GAI tool to draft a legal document can pose serious risks if the user does not thoroughly review the tool's output."  *Al-Hamim v. Star Hearthstone, LLC*, 2024 COA 128, ¶ 32.  Self-represented litigants must be particularly careful, as they "may not understand that a GAI tool may confidently respond to a query regarding a legal topic 'even if the answer contains errors, hallucinations, falsehoods, or biases.'"

28

*Id.* (citation omitted).[4] We advise the parties that errors caused by GAI in future filings may result in sanctions. *See id.* at ¶ 41.

¶ 70 As the prevailing party in McDonald's appeal, the trustee may recover his costs for that appeal under C.A.R. 39(a)(2). Because neither party entirely prevailed in Lehr-Guthrie's appeal, the trustee may recover his costs for that appeal only if ordered by the district court on remand. *See* C.A.R. 39(a)(4).

## IV. Disposition

¶ 71 The order awarding attorney fees and costs against Lehr-Guthrie is reversed, and the order approving termination of the trust and the plan for distributing the trust assets is reversed to the extent that it awards attorney fees and costs against Lehr-Guthrie. The order approving termination and the distribution plan is affirmed in all other respects. The order approving the surcharge against McDonald is also affirmed.

¶ 72 The case is remanded to the district court to

---

[4] Hallucinations are case names and citations that a GAI tool makes up. *Al-Hamim v. Star Hearthstone, LLC*, 2024 COA 128, ¶ 2.

- redetermine the issue of attorney fees and costs against Lehr-Guthrie, making pertinent factual findings and explaining the basis for its decision;

- determine and award to the trustee his costs in defending McDonald's appeal; and

- consider any request from the trustee to recover his costs in defending Lehr-Guthrie's appeal.

JUDGE FREYRE and JUDGE MEIRINK concur.