25CA0831 Aurora Housing v City of Aurora 04-09-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0831
Arapahoe County District Court No. 24CV31404
Honorable Don J. Toussaint, Judge

Housing Authority of Aurora, Colorado, a body both corporate and politic,

Plaintiff-Appellee,

v.

The City of Aurora, Colorado, an incorporated home-rule municipality,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE GOMEZ
Pawar and Graham*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced April 9, 2026

Garnett Powell Maximon Barlow & Farbes, Hubert A. Farbes, Jr., Stanley L. Garnett, Robert L. Barlow, Kristin L. Arthur, Denver, Colorado, for Plaintiff-Appellee

Peter A. Schulte, City Attorney, Hanosky Hernandez, Assistant City Attorney, Aurora, Colorado; Kutak Rock LLP, Thomas W. Snyder, Kathleen F. Guilfoyle, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     After the Aurora City Council passed an ordinance changing the eligibility requirements and term lengths for commissioners of the Housing Authority of Aurora (the Authority), the Authority filed this action against the City, seeking a declaratory judgment that the ordinance is unenforceable because it violates the state Housing Authorities Law, §§ 29-4-201 to -232, C.R.S. 2025.  The City argued that the Authority lacks standing to challenge the ordinance.  The trial court disagreed and, after a bench trial, determined that the ordinance is unenforceable and entered judgment for the Authority.

¶ 2     On appeal, the City challenges the trial court's decisions on standing and on the merits of the Authority's declaratory judgment claim.  We reject both challenges and therefore affirm the judgment.

## I.     Background

¶ 3     In 1975, the City established the Authority pursuant to the Housing Authorities Law to address the need for safe, sanitary, and affordable housing within the City.  Originally, the Authority's seven commissioners were appointed to serve five-year terms.

¶ 4     In 2024, the City Council passed an ordinance modifying the Authority's governance by establishing new eligibility requirements for commissioners, shortening commissioner terms to three years,

1

and staggering commissioner terms. Under the ordinance, six of the seven existing commissioners were to be removed from their positions six months to a year and a half before their terms were originally set to expire.[1]

¶ 5 After the ordinance was passed, the Authority sued the City, seeking a declaratory judgment that the ordinance violates the Housing Authorities Law by shortening existing commissioners' terms. None of the commissioners is a party to the case.

¶ 6 The City filed a motion to dismiss, arguing, among other things, that the Authority lacks standing to challenge the ordinance. The trial court denied the motion, concluding that the Authority has standing. The court also granted the Authority's request for a preliminary injunction preventing the ordinance from being enforced while the case was pending.

¶ 7 Following a bench trial, the trial court entered its findings of fact and conclusions of law. The court first reiterated its conclusion

---

[1] Two commissioner terms that were set to expire on June 30, 2025 and June 30, 2026 instead would expire at the end of 2024. Two of the four commissioner terms that were set to expire on June 30, 2027 instead would expire at the end of 2025, and the other two would expire at the end of 2026.

that the Authority has standing. It then concluded that the ordinance is invalid because it violates the constitutional ban on retroactive legislation. *See* Colo. Const. art. II, § 11. As part of its reasoning, the court concluded that the ordinance retroactively shortens commissioners' terms, effectively removing commissioners from office without complying with the process set out in the Housing Authorities Law. *See* § 29-4-208, C.R.S. 2025. The court then entered a declaratory judgment in favor of the Authority, ordering that the City can amend the method of appointment only as to future commission appointments and that the existing commissioners would serve the remainder of their original terms unless they were removed for cause pursuant to the procedures set out in the Housing Authorities Law.

¶ 8 We first consider the City's challenge to the Authority's standing before turning to the merits.

## II. Standing

### A. Legal Standards

¶ 9 Standing is a threshold issue that must be satisfied before a court may decide a case on its merits. *HealthONE v. Rodriguez,* 50 P.3d 879, 892 (Colo. 2002). Because it is a jurisdictional matter, we

review the trial court's determination de novo. *Friends of the Black Forest Reg'l Park, Inc. v. Bd. of Cnty. Comm'rs*, 80 P.3d 871, 876-77 (Colo. App. 2003). We may consider the allegations in a complaint, as well as testimony and other documentary evidence, to determine whether a party has standing. *Rangeview, LLC v. City of Aurora*, 2016 COA 108, ¶ 11. Whether a party has standing is determined as of the time the action was filed. *Am. Comp. Ins. Co. v. McBride*, 107 P.3d 973, 976 (Colo. App. 2004).

¶ 10    "Colorado's test for standing 'has traditionally been relatively easy to satisfy.'" *Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 17 (quoting *Ainscough v. Owens*, 90 P.3d 851, 856 (Colo. 2004)). To establish standing in a declaratory judgment action, as in any other action, a party must show that (1) they have suffered an injury in fact and (2) the injury has affected a legally protected interest. *Am. Heritage Rys., Inc. v. Colo. Pub. Utils. Comm'n*, 2025 CO 27, ¶ 40; *Hickenlooper*, ¶ 8.

¶ 11    A party satisfies the injury in fact requirement if they show that they have suffered "a concrete adverseness which sharpens the presentation of issues that parties argue to the courts." *Ainscough*, 90 P.3d at 856 (quoting *City of Greenwood Village v. Petitioners for*

4

*Proposed City of Centennial,* 3 P.3d 427, 437 (Colo. 2000)). Such an injury may be tangible, such as physical damage or economic harm, or intangible, such as a deprivation of a legally created right. *Id.* However, the remote possibility of a future injury or an injury that is overly indirect and incidental to the action won't convey standing. *Id.* Although the required showing is "somewhat relaxed in declaratory judgment actions," such that "one need not 'risk the imposition of fines or imprisonment or the loss of property or profession in order to secure the adjudication of uncertain legal rights,'" a party seeking declaratory relief must nevertheless "demonstrate that the challenged [action] will likely cause . . . detriment to conduct or activities that are presently occurring or are likely to occur in the near future." *Mt. Emmons Mining Co. v. Town of Crested Butte,* 690 P.2d 231, 240 (Colo. 1984) (quoting *Cmty. Tele-Commc'ns, Inc. v. Heather Corp.,* 677 P.2d 330, 334 (Colo. 1984)).

¶ 12     A party satisfies the legally protected interest requirement if they show that they have a claim for relief to redress their injury under the constitution, the common law, a statute, or a rule or regulation. *Ainscough,* 90 P.3d at 856; *see also Bd. of Cnty.*

*Comm'rs v. Bowen/Edwards Assocs., Inc.*, 830 P.2d 1045, 1053 (Colo. 1992) (an interest is protected if it "emanates from a constitutional, statutory, or judicially created rule of law that entitles the plaintiff to some form of judicial relief"). Like an injury in fact, a legally protected interest may be tangible, such as an interest based on a contract or property rights, or intangible, such as an interest in having a government that acts within legal boundaries. *Ainscough*, 90 P.3d at 856. Although the Declaratory Judgment Act and C.R.C.P. 57 provide procedural mechanisms to recognize rights, they don't confer or expand such rights. *State v. Hill*, 2023 CO 31, ¶ 10.

## B.   Application

¶ 13     We agree with the trial court that the Authority has sufficiently established its standing to bring its declaratory judgment claim.

¶ 14     First considering the second standing requirement — a legally protected interest — we conclude that the Authority has a legally protected interest in redressing any infringement of its powers and obligations under the Housing Authorities Law.

¶ 15     Colorado courts have consistently recognized a governmental body's legally protected interest in preventing an encroachment of

authority conferred upon it by constitution or statute. *See, e.g., Bd. of Cnty. Comm'rs v. Colo. Dep't of Pub. Health & Env't,* 218 P.3d 336, 342-44 (Colo. 2009) (recognizing a county's legally protected interest in its statutory right to issue or refuse to issue certificates allowing waste disposal); *Colo. Gen. Assembly v. Lamm,* 700 P.2d 508, 516 (Colo. 1985) (recognizing the general assembly's legally protected interest in its appropriations power derived from various constitutional and statutory provisions); *Bd. of Cnty. Comm'rs v. Colo. Oil & Gas Conservation Comm'n,* 81 P.3d 1119, 1123 (Colo. App. 2003) (recognizing the Colorado Oil and Gas Conservation Commission's legally protected interest in its statutory authority to regulate the oil and gas industry).

¶ 16    In this case, the Authority cites various provisions of the Housing Authorities Law that confer powers and obligations upon it as a local housing authority. Section 29-4-202(1)(d) and (e), C.R.S. 2025, provide for the establishment of local housing authorities to address "the clearance, replanning, and reconstruction of the areas in which unsanitary or unsafe housing conditions exist" as well as "the providing of safe and sanitary dwelling accommodations on such financial terms that enable persons who now live in unsafe or

7

unsanitary dwelling accommodations or in overcrowded and congested dwelling accommodations to afford to live in safe and sanitary or uncongested dwelling accommodations." And section 29-4-209(1), C.R.S. 2025, allows a local housing authority to "exercis[e] public powers and hav[e] all the powers necessary or convenient to carry out and effectuate the purposes and provisions of [the Housing Authorities Law]," including various enumerated powers, such as the powers to investigate housing conditions; determine where unsafe, unsanitary, or substandard housing conditions exist; purchase or lease housing projects; provide for the construction, repair, or improvement of projects; grant or lend funding for projects; operate projects; buy and sell property; rent dwellings in projects; act as the federal government's agent in acquiring, constructing, operating, or managing federal projects; and "do all things necessary or convenient to carry out" these powers. Also among a local housing authority's enumerated powers is the power "[t]o sue and be sued." § 29-4-209(1)(q).

¶ 17    To the extent that the City relies on *Colorado State Board of Education v. Adams County School District 14*, 2023 CO 52, ¶ 52, to argue that the Authority doesn't have a legally protected interest

8

unless a statute either directly authorizes it to seek judicial review or incorporates parts of the Administrative Procedures Act, section 29-4-209(1)(q) provides that authority. Although statutory provisions allowing a political body to sue and be sued "do[] not grant a general power to sue in any and all situations[]" and may be insufficient on their own to establish standing, *Romer v. Bd. of Cnty. Comm'rs*, 956 P.2d 566, 577 (Colo. 1998) (emphasis omitted) (quoting *Bd. of Cnty. Comm'rs v. Love*, 470 P.2d 861, 863 (Colo. 1970)), they may "indicate[] an implicit legislative intent to allow" particular kinds of suits, *Bd. of Cnty. Comm'rs v. Denv. Bd. of Water Comm'rs*, 718 P.2d 235, 242 (Colo. 1986). Here, they indicate a legislative intent to allow local housing authorities to bring suits to redress infringements of their powers and obligations under the Housing Authorities Law. *See Colo. Dep't of Pub. Health & Env't*, 218 P.3d at 342-44; *Colo. Gen. Assembly*, 700 P.2d at 516; *Colo. Oil & Gas Conservation Comm'n*, 81 P.3d at 1123; *see also Denv. Bd. of Water Comm'rs*, 718 P.2d at 242 (similar statutory language indicated a legislative intent to allow counties to bring suits to redress impairments to their statutory power to provide water services).

¶ 18 Now that we've identified a legally protected interest, we turn to the first standing requirement and conclude that the Authority has sufficiently alleged an injury in fact to that interest. We agree with the trial court that the Authority has shown that the ordinance "will curtail [its] statutory powers." As the court explained,

> [The ordinance's] abrupt removal of the [c]ommissioners will undoubtedly erode confidence in the [Authority's] role as an agent for the federal government in connection with the acquisition, construction, operation, or management of a project. In its role, the [Authority] provides financing for projects, pledges and encumbers its funds in support or in connection with projects, and executes contracts. The expected continuity of the commissioners, who were appointed to a five-year term pursuant to the [Housing Authorities Law] and [the previous ordinance], is essential by current and future business partners and investors.

¶ 19 Simply stated, the Authority — which necessarily acts through its commissioners — has shown that the ordinance hinders its ability to carry out its statutory mandate.

¶ 20 The City contends, however, that the Authority presented no evidence that any injuries actually were occurring or were likely to occur but simply speculated that they might occur in the future. We disagree. The Authority's affidavits allege sufficient actual and

threatened injury. For instance, the affidavits allege that "the [o]rdinance creates underwriting uncertainty for potential funders, making the Authority and its subsidiaries undesirable borrowing entities for development purposes," and that "[t]he Authority is having trouble maintaining financing on prospective targets for affordable housing." They also describe various concerns relating to "the Board's continuing operations powers and [the] finality of its forthcoming decisions"; "the authority of [the] Authority's sitting commissioners to independently conduct the mission of, and effect the Bylaws adopted by[,] the Authority"; "the [Board's] reputation for effective installation and administration of th[e] Authority's statutory directives"; "the ability of sitting commissioners [to] participate in or to maintain relationships with those entities that the Authority partners with for the conduct of affordable housing financing and development"; a loss of "existing and future development partnerships and financing opportunities"; "the Authority's ability to plan for and engage in affordable housing initiatives"; and "the ability of the Authority to generate development fees and other fees from affordable housing developments that allow [it] to further its mission of enhancing

11

affordable housing within the City." Considering the "relatively easy" test for establishing standing, *Ainscough*, 90 P.3d at 856, this is sufficient to show an existing or likely detriment to the Authority's conduct and activities. *See Mt. Emmons Mining Co.*, 690 P.2d at 240.

¶ 21　The City also contends that any harm that might result from the ordinance would be indirect harm from third parties that isn't sufficient to establish standing. Again, we disagree. The City cites a case where hotels alleged a potential future economic harm caused by a new competitor being allowed to compete with them in the marketplace, which in turn had nothing to do with the alleged procedural irregularity raised in the lawsuit. *See 1405 Hotel, LLC v. Colo. Econ. Dev. Comm'n*, 2015 COA 127, ¶ 49. Here, by contrast, the Authority has established direct links between the complained-of action — the abrupt shortening of commissioner terms — and the alleged injury — the curtailment of the Board's ability to carry out its statutory mandate.

¶ 22　We therefore conclude that the Authority has established that the injuries it claims to have suffered affect a legally protected interest and, thus, that it has standing to bring this action.

### III.    Preemption

¶ 23    Having determined that the Authority has standing to challenge the ordinance, we now turn to whether the ordinance is preempted by state law.  We conclude it is.

### A.    Legal Standards

¶ 24    Where there is a conflict between legislation by a state and a home-rule city like Aurora, resolution of the conflict depends on whether the issue is a matter of statewide concern, local concern, or mixed state and local concern.  *Ryals v. City of Englewood*, 2016 CO 8, ¶ 12.  If the issue is one of statewide concern, state law prevails, and a home-rule city has no power to regulate at all unless it is specifically authorized to do so by the constitution or state law.  *Id.* If the issue is one of local concern, both the state and home-rule cities may regulate, but in the event of a conflict, the local provision prevails over state law.  *Id.*  And if the issue is a matter of mixed state and local concern, again both the state and home-rule cities may regulate, but in the event of a conflict, state law preempts and supersedes the local provision.  *Id.*

¶ 25    Whether a particular matter is one of state, local, or mixed concern is a legal issue requiring a court to consider the totality of

the circumstances. *Webb v. City of Black Hawk*, 2013 CO 9, ¶ 16. We review such an issue de novo. *Id.*

## B. Application

¶ 26 The parties agree, as do we, that the issue of affordable, safe, and sanitary housing is one of mixed state and local concern. *See Town of Telluride v. Lot Thirty-Four Venture, L.L.C.*, 3 P.3d 30, 38 (Colo. 2000) ("[B]oth the municipality and the state have significant interests in maintaining the quality and quantity of affordable housing in the state.").

¶ 27 Accordingly, if the ordinance at issue conflicts with state law, then it is preempted and superseded by that state law. *See Ryals*, ¶ 12. Conversely, if there is no conflict, the two provisions can coexist. *See City of Northglenn v. Ibarra*, 62 P.3d 151, 155 (Colo. 2003). To determine whether there is a conflict, "we [ask] 'whether the home-rule city's ordinance authorizes what [a] state statute forbids, or forbids what [a] state statute authorizes.'" *Ryals*, ¶ 41 (alterations in original) (quoting *Webb*, ¶ 43).

¶ 28 In line with the trial court's conclusions, the Authority contends that the ordinance conflicts with the appointment and removal provisions of the Housing Authorities Law, as well as the

Housing Authorities Law's overall statutory scheme, and violates the constitutional ban on retroactive legislation. The City disputes all of these contentions.

¶ 29    Because we agree with the Authority's contention that the ordinance conflicts with the removal provision of the Housing Authorities Law, and because that conflict alone is sufficient to affirm the judgment, we don't consider the other challenges raised by the Authority and resolved by the trial court. *See Taylor v. Taylor*, 2016 COA 100, ¶ 31 (an appellate court may affirm a judgment on any basis supported by the record).

¶ 30    The Housing Authorities Law's removal provision sets forth the only method by which housing authority commissioners may be removed from office — by the mayor, for cause, and after notice and an opportunity to be heard. Specifically, under the removal provision, the mayor may remove a commissioner for "inefficiency or neglect of duty or misconduct in office," § 29-4-208(1), or for "violating willfully any law of the state or any term, provision, or covenant in any contract to which the [local housing] authority is a party," § 29-4-208(2). But before a commissioner may be removed, they must be given a copy of the charges and must be afforded an

15

opportunity to be heard in person or by counsel on those charges. § 29-4-208(1)-(2). *See also Roe v. Hous. Auth. of City of Boulder*, 909 F. Supp. 814, 819 (D. Colo. 1995) (recognizing the "independent nature of the relationship between a housing authority and the city which created it," due in part to "the limited nature of the authority to appoint commissioners for fixed terms and to remove them only for cause").

¶ 31    Although the ordinance purports merely to shorten commissioner terms and set forth new eligibility criteria, as applied, it removes several existing commissioners months or as much as a year and a half before their terms were set to end. It also does so through the action of the City Council, not the mayor. And it doesn't identify any good cause for removal recognized under the removal provision, nor does it provide a copy of any charges relating to such cause or an opportunity to be heard on the charges. Thus, the ordinance purports to permit that which the removal provision prohibits — the removal of commissioners by someone other than the mayor, without cause, and without any notice or opportunity to be heard on any purported cause. *See Ryals*, ¶ 41.

¶ 32    We reject the City's arguments that the ordinance does not violate the removal provision because the City Council didn't "invoke" the removal provision and because the ordinance shortens the terms for all commissioners whereas the removal provision sets forth the method for removing a single commissioner. First, just because the City Council didn't expressly invoke the removal provision does not mean that provision isn't implicated. Second, the removal provision doesn't merely set forth the method for removing a single commissioner; section 29-4-208(2) also provides that multiple commissioners may be removed if they are "found to have acquiesced in" a willful violation of state law or a contract to which the local housing authority is a party. Finally, "shortening" the terms for all commissioners and, in so doing, removing six sitting commissioners isn't any more permissible than doing so for just one. Rather, it violates the removal provision six times over. Indeed, allowing a city to effectuate the removal of commissioners simply by modifying their terms, on either an individual or a collective basis, would eviscerate the protections of the removal statute and would chip away at the independence the general

17

assembly established between housing authorities and the cities that created them.  *See Roe*, 909 F. Supp. at 819.

¶ 33    Because we conclude that the ordinance conflicts with the removal provision of the Housing Authorities Law, the Housing Authorities Law preempts and supersedes the ordinance.  *See Ryals*, ¶ 12.  We therefore affirm the judgment on this basis.

## IV.   Disposition

¶ 34    The judgment is affirmed.

JUDGE PAWAR and JUDGE GRAHAM concur.